IN RE INFELISE'S ESTATÉ. MELZNER, APPELLANT, *v.*
TRUCANO, RESPONDENT.

(No. 3,510.)

(Submitted May 3, 1915. Decided May 24, 1915.)

[149 Pac. 365.]

*Administrators—Nonresident Heirs—Revocation of Letters of*
*Administration — Petition — Insufficiency — Discretion —*
*Waiver—Laches—Treaties—Effect.*

Administrators—Revocation of Letters—Right of Nonresident Heirs.

1. Where letters of administration have been granted to any person
other than those enumerated in section 7447, Revised Codes, anyone
of the persons therein named, though a resident of a foreign country,
may seek the revocation of such letters and nominate someone to act
as administrator.

[As to right of person entitled to administer to nominate adminis-
trator to exclusion of person next entitled, see notes in Ann. Cas.
1914A, 1014; 22 L. R. A. (n. s.) 1161.]

Appeal and Error—Correct Conclusion—Wrong Reason—Affirmance.

2. If an order of the district court is warranted by any consider-
ation appearing upon the face of the record, it will be affirmed, though
based upon an erroneous reason.

Administrators—Revocation of Letters—Insufficiency of Petition.

3. Under section 7446, Revised Codes, a request for the revocation
of letters of administration by one of the persons named in section
7447 must be filed in the district court, and a petition failing to allege
the filing of such a request is insufficient.

Same—Revocation of Letters—Discretion.

4. A request for the revocation of letters of administration by any
person named in section 7447, Revised Codes (other than the surviving
husband or wife), is addressed to the sound discretion of the district
court, reviewable only in case of a clear abuse thereof.

Same—Nomination of Administrator—Waiver.

5. The right conferred by section 7447, Revised Codes, to name a
person to administer the estate of a decedent, may be waived by re-
fusal or failure to claim the privilege, or by unreasonable delay in
claiming it.

Same—Laches.

6. Where nearly seventeen months after the appointment of an ad-
ministrator had elapsed before a petition seeking the revocation of
his letters and the appointment of the nominee of a nonresident heir
was filed, a dismissal of the petition was justified on the ground of
unreasonable delay.

Treaties—Effect.

7. Treaties are, by virtue of Article VI of the United States Con-
stitution, the supreme law of the land, and therefore binding upon
state courts.

[As to effect of treaties and power to annul by hostile legislation,
see note in 81 Am. Dec. 536.]

Administrators—Effect of Treaties.
    8.  *Held,* under the treaty between the United States and Italy, pro-
viding that the respective consuls-general, consuls, vice-consuls and
consular agents shall enjoy in both countries the rights and privileges
granted to the officers of the same grade of the most favored nation,
the Italian consular agent for Montana was entitled, in the absence and
under the authority of the Italian consul-general, as against the nom-
inee of a nonresident heir, to administer the estate of an Italian subject
   .   dying intestate in Montana.

*Appeal from District Court, Jefferson County; Wm. A. Clark,
Judge.*

PETITION by A. B. Melzner for the revocation of letters of
administration of the estate of August Infelise, deceased, issued
to C. A. Trucano, and the issuance of letters to petitioner.
From an order dismissing the petition, the petitioner appeals.
Affirmed.

*Messrs. Nolan & Donovan,* for Appellant, submitted a brief;
*Mr. Louis P. Donovan* argued the cause orally.

The nonresidence of the parent of the deceased person will not
prevent the parent from exercising the privilege conferred upon
him or her by section 7447 of the Revised Codes. While the
question has apparently not been discussed or argued by this
court, it was impliedly decided in *Re Koller's Estate,* 40 Mont.
137, 105 Pac. 549. It has been recently held in California that
section 1383 of the California Code, which is identical with sec-
tion 7447 of our Code, does not confer the right to revoke let-
ters of administration upon the nominee of a nonresident father
or mother of the deceased. (*In re Martin's Estate,* 163 Cal.
440, 125 Pac. 1055.) All of the reasons advanced by the Cali-
fornia court in support of the conclusion in Martin's estate are
consistent with the view that if the nonresident parent had the
right to nominate an administrator in the first instance, he might
obtain, through his nominee, a revocation of letters previously
issued to one less entitled; and since our statute confers the
right to nominate an administrator in the first instance upon the
nonresident parent, we respectfully submit that there is noth-
ing in the case of *In re Martin* inconsistent with the view that

in this state the nominee of a nonresident parent may obtain the revocation of letters previously issued to another.

The following California cases, which hold that the court may, in the exercise of its discretion, refuse to appoint the nominee of a relative, are not in point, because they were not decided under a statute similar to section 7447 of our Codes, but were decided under section 1379 of the California Code, which is identical with section 7446 of the Revised Codes of Montana: *Estate of Harrison,* 135 Cal. 7, 66 Pac. 846; *Estate of Bedell,* 97 Cal. 339, 32 Pac. 323; *Estate of Brundage,* 141 Cal. 538, 75 Pac. 175; *Estate of Turner,* 143 Cal. 438, 77 Pac. 144; *Estate of Richardson,* 120 Cal. 344, 52 Pac. 832. Section 7446 of the Revised Codes, which is identical with section 1379 of the California Code, under which the above cases were decided, has no application to the case at bar, because: (a) It has no reference to a case where it is necessary to revoke letters of administration already issued. (b) It has no reference to a case unless the party nominating is himself competent; if the party nominating is not competent, the nomination is a legal nullity and will not even move the discretion of the court. (*Estate of Beach,* 63 Cal. 458; *Estate of Hyde,* 64 Cal. 228, 30 Pac. 804.)

The provisions of the treaty between the United States and Italy cannot, but do, set aside the statutory provisions of this state relative to probate proceedings. (*In re Ghio's Estate,* 157 Cal. 552, 137 Am. St. Rep. 145, 37 L. R. A. (n. s.), 549, 108 Pac. 516.)

The cases cited and relied upon by counsel for defendant in his brief filed in the court below were considered by the supreme court of the United States in *Rocca* v. *Thompson,* where it was held that the courts, whose opinions are cited by defendant, had reached an erroneous conclusion in holding that the treaty between the United States and Argentine Republic gave to the consuls of Argentine Republic a right to administer upon the estates of citizens of that country in contravention to state statutes upon the subject. (*Rocca* v. *Thompson,* 223 U. S. 317, 56 L. Ed. 453, 32 Sup. Ct. Rep. 207.) In the same case it was

impliedly held that the consul could not claim such a privilege under the treaty with Paraguay, which, in the case at bar, is relied upon by counsel for the defendant in his third affirmative defense. Since the ratification of the treaty proclaimed March 20, 1911, between the United States and Sweden, only one appellate court has had occasion, so far as we know, to construe the provisions of that treaty. The question now before this court was before the supreme court of Minnesota (*Austro-Hungarian Consul* v. *Westphal* (*In re Lis Estate*), 120 Minn. 122, 139 N. W. 300.) In that case the supreme court of Minnesota held that the language of the Swedish treaty did not set aside or in any manner affect the state statutes relating to probate proceedings and defining the priority of rights to letters of administration. We submit the provisions of the treaty between the United States and Italy do not in any manner repeal or set aside section 7447 of the Revised Codes, and that the third and fourth defenses were subject to demurrer, and that the demurrers thereto should have been sustained.

*Mr. A. C. McDaniel,* for Respondent, submitted a brief and argued the cause orally.

We are not claiming under the Argentine treaty, but under the treaties with Paraguay and Sweden, whose provisions distinctly, clearly and positively state that consuls, *etc.,* may be appointed administrators. The following cases, involving the Argentine treaty will show that the most favored nation clause does carry the provisions of the treaties with Paraguay and Sweden to the Italian treaty: *Carpigiani* v. *Hall,* 172 Ala. 287, Ann. Cas. 1913D, 651, 55 South. 248; *Tartaglio's Estate,* 12 Misc. Rep. 245, 33 N. Y. Supp. 1121; *Fattosini's Estate,* 33 Misc. Rep. 18, 67 N. Y. Supp. 1119; *Scutella's Estate,* 145 App. Div. 156, 129 N. Y. Supp. 20; *McEvoy* v. *Wyman* (*In re Wyman*), 191 Mass. 276, 114 Am. St. Rep. 601, 77 N. E. 379; *Re Arduino,* 9 Ohio N. P. (n. s.) 369; *Re Silvetti,* 66 Misc. Rep. 394, 122 N. Y. Supp. 400. There are some recent cases reported in the New York Supplement which construe the provisions of the treaties

with Paraguay and Sweden, and hold that these treaties with the Italian treaty give the Italian consul the right to letters of administration in preference to others.   These cases are: *Re Baglieri's Estate* (Sur. Ct.), 137 N. Y. Supp. 175; *Re Lombardi,* 78 Misc. Rep. 689, 138 N. Y. Supp. 1007; *Re Riccardo,* 79 Misc. Rep. 371, 140 N. Y. Supp. 606; *Re Vukelic's Estate* (Sur. Ct.), 143 N. Y. Supp. 679; *Re D'Adamo's Estate* (Sur. Ct.), 141 N. Y. Supp. 1103, affirmed in 159 App. Div. 40, 144 N. Y. Supp. 429.

MR. JUSTICE SANNER delivered the opinion of the court.

On October 21, 1912, the respondent, C. A. Trucano, was appointed administrator of the estate of August Infelise, who died intestate in Jefferson county.   Thereafter and on March 16, 1914, the appellant, Melzner, filed his petition, praying revocation of respondent's letters and the issuance of letters of administration to himself, basing his petition upon an alleged nomination by the mother and sole heir of the deceased, she residing in Italy.   To this the respondent answered, denying the nomination of the appellant by the mother of the deceased, and pleading affirmatively: (1) That on October 29, 1913, the appellant filed a similar petition which, being resisted by the respondent upon the grounds now urged, was after hearing dismissed by the court for want of sufficient evidence to show appellant's nomination, and, no appeal having been taken from such order, the matters and things sought to be presented by the present petition are *res adjudicata;* and (2) that Infelise was, at the time of his death, a subject of the kingdom of Italy, whereof the appellant is the consular agent for Montana, entitled by treaty between the United States and Italy to have, and directed by the Italian consul-general to procure, letters of administration upon said estate.   To this Melzner demurred, and the court, by a single order made and entered on the 15th day of May, 1914, overruled said demurrer and dismissed the petition "on the ground that the applicant has no authority to apply for letters because the nominating person has no right, under the showing

made and under the law, to ask for the revocation of the letters issued to C. A. Trucano.'' From that order this appeal is taken.

1. It is supposed by the appellant that the order in question [1] can be justified, if at all, only upon the theory that the district court correctly held the mother's nomination to be ineffective because of her nonresidence. If such is the view intended to be expressed by the order—which we doubt—it was certainly erroneous. (Rev. Codes, sec. 7447; *In re Craigie's Estate,* 24 Mont. 37, 60 Pac. 495; *In re Koller's Estate,* 40 Mont. 137, 105 Pac. 549.) But this would not absolve us from the duty of affirming the order if it be warranted by any considera- [2] tion appearing upon the face of the record. (*Menard* v. *Montana Cent. Ry. Co.,* 22 Mont. 340, 56 Pac. 592.) And such consideration does appear. The statute above referred to, under which the nominee of a surviving mother may be entitled to letters and to the revocation of prior letters, is not absolute and available at all times, under all conditions. The pleading in such, as in all other cases, must show *prima facie* that the applicant is entitled to the relief sought. In the present instance [3] it is alleged that the mother did, on January 21, 1914, ''duly make, execute and deliver an instrument in writing, requesting the petitioner to obtain revocation of the letters of administration heretofore issued to C. A. Trucano, and further requesting  *  *  *  that said A. B. Melzner be appointed administrator,'' but this is merely the opinion of Melzner that a paper, in effect as stated, was properly executed by the mother. Section 7447 is to be read in connection with the other Code sections upon the same subject, including section 7446. Under the latter section the request must be filed in the court. Nowhere is it made to appear that this was done, and no copy of the request is attached to the petition; hence it cannot, in strictness, be said that any request was before the court. Assuming, however, that the allegation above quoted was sufficient *prima facie,* the petitioner had and could claim no right in the premises other than as the nominee of the mother. Now, save as to [4] a surviving husband or wife—whose right to administer or

to name the administrator is absolute (Rev. Codes, sec. 7432; *In re Blackburn's Estate,* 48 Mont. 179, 137 Pac. 381)—a request by any of the other persons named in section 7447 is addressed to the sound discretion of the court, and a refusal to heed such request cannot be reversed unless a clear abuse of such discretion is shown (*Richardson's Estate,* 120 Cal. 344, 52 Pac. 832; *Estate of Morgan,* 53 Cal. 243; *Healy's Estate,* 122 Cal. 162, 54 Pac. 736; *Harrison's Estate,* 135 Cal. 7, 66 Pac. [5] 846). Even as to the surviving husband or wife the benefit of section 7447 may be waived (Rev. Codes, sec. 6181; *In re Blackburn's Estate, supra*), not only by express assent, but also by refusal or failure to claim, or by unreasonable delay in claiming, the advantage given by that section. (*Estate of Keane,* 56 Cal. 407; *McColgan* v. *Kenny,* 68 Md. 258, 11 Atl. 819; *Pollard* v. *Mohler,* 55 Md. 284, 287; *Rice* v. *Tilton,* 13 Wyo. 420, 80 Pac. 828; *Rodes* v. *Boyers,* 106 Tenn. 434, 61 S. W. 776; *Edwards* v. *Bruce,* 8 Md. 387, 392; *Sprague's Estate,* 125 Mich. 357, 84 N. W. 293.) The petition in question was filed on March [6] 16, 1914, nearly seventeen months after the appointment of Trucano, and there is nothing on its face to show when the mother became apprised of this event. As, however, no question is raised touching Trucano's appointment in the first instance, it must be presumed that due notice was given before it was made, and the effect of this is to impute constructive knowledge to the mother that Trucano would be appointed in the absence of timely objection. Without any showing of want of actual notice, or without any averments excusatory of her delay, and after such a lapse of time during which the administrator previously appointed was permitted to act without criticism or complaint, the court cannot be put in error for refusing to entertain the petition to revoke; and until Trucano's letters were revoked, the appellant could not be appointed. (*Estate of Keane, supra; Bedell's Estate,* 97 Cal. 339, 32 Pac. 323; *Jewett* v. *Turner,* 172 Mass. 496, 52 N. E. 1082.)

Nor is this situation altered because the answer alleges, as the basis for a plea of *res adjudicata,* that the appellant did, on

October 29, 1913, file a similar petition to the one now before us. This circumstance cannot be considered at all in determining the sufficiency of the showing made by the petition; but, if it could, it was still possible for the court to make the order in question, because of the first delay of twelve months and the apparent acquiescence for five months after the dismissal of the first petition.

2. The appellant assigns error in the overruling of his demurrer to the respondent's affirmative defenses. The import-
[7, 8] ance of this to the case as it now stands is not clear; for, if the proceedings were correctly dismissed for insufficiency in the showing made by the petition, any error committed in ruling upon the demurrer was harmless. To set the matter at rest, however, and in due respect to the elaborate arguments of counsel upon the subject, we express the view that so far as the defenses based upon the treaty with Italy are concerned, the ruling was not erroneous. Article XVII of that treaty (20 Stat. 732) provides: "The respective consuls-general, consuls, vice-consuls and consular agents, as likewise the consular chancellors, secretaries, clerks or attachés, shall enjoy in both countries, all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade, of the most favored nation." Under this "most favored nation" clause, reliance is had upon the provisions of Article X of the treaty between the United States and Paraguay (12 Stat. 1096) and of Article XIV of the treaty between the United States and Sweden (37 Stat. 1487). The stipulation in the treaty with Sweden is that: "In the event of any citizens of either of the two contracting parties dying without will or testament, in the territory of the other contracting party, the consul-general, consul, vice-consul general, or vice-consul of the nation to which the deceased may belong, or, in his absence, the representative of such consul-general, consul, vice-consul general, or vice-consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the

property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate." These provisions are the supreme law of the land, binding upon us, anything in the Constitution or laws of this state to the contrary notwithstanding (U. S. Const., Art. VI); and, under the liberal construction to which treaties are entitled (*Shanks* v. *Dupont,* 3 Pet. 242, 7 L. Ed. 666), upon the weight of decided cases (*Scutella's Estate,* 145 App. Div. 156, 129 N. Y. Supp. 20; *McEvoy* v. *Wyman* (*In Re Wyman*), 191 Mass. 276, 114 Am. St. Rep. 601, 77 N. E. 379; *Carpigiani* v. *Hall,* 172 Ala. 287, Ann. Cas. 1913D, 651, 55 South. 248; *Lobrasciano's Estate,* 38 Misc. Rep. 415, 77 N. Y. Supp. 1040), and in accordance with the uniform practice of the executive department of the government, where the primary duty of interpreting treaties resides (5 Moore, Int. Law Digest, pp. 117–125), we think it perfectly clear that the Italian consular agent for Montana, in the absence and under the authority of the Italian consul-general, is entitled, as against the nominee of a nonresident heir, to administer the estate of any Italian subject dying intestate within his jurisdiction.

The appellant contends, however, that even on this theory the respondent could not be appointed, because it is not averred that the Italian consul-general is absent from the United States, or from the district over which he presides, which district includes eleven states of this Union, extending from South Dakota to Arizona. The answer avers that the Italian consul-general resides in Denver, Colorado; that appellant is the Italian consular agent for the state of Montana, appointed to act and acting for the consul-general in the absence of the latter from this state, and that he has been specifically directed by the consul-general to apply for these letters of administration. Manifestly, the treaty does not contemplate that the consul-general shall be personally present in all the states of his district at the same moment of time, but that, as to all matters within his powers, he may act through consular agents when he is not personally present at the place where his consular activities are for the moment

required.   As regards the administration of estates, the phrase "in the absence of the consul-general" obviously means his nonpresence in the state wherein the administration occurs.

The order appealed from is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

