# FARNSWORTH et al. v. HATCH.

### No. 2786.  Decided August 21, 1915 (151 Pac. 537).

1. APPEAL AND ERROR—"FINAL ORDER"—REFUSAL TO REMOVE EXECUTOR—STATUTE.  Under Const. Art. 8, Sec. 9, providing that appeals shall lie from the final orders and decrees of the court in the administration of decedents' estates, and Comp. Laws 1907, Sec. 3300, making a like provision, where a district court, acting as a probate court, denied the application of two heirs at law, legatees, and devisees of a decedent for the removal of his executrix, the order denying the removal was a final order, from which an appeal might be taken.[1]  (Page 65.)

2. JURY—REMOVAL OF EXECUTRIX—TRIAL BY JURY.  Heirs at law, legatees, and devisees of a decedent, applying for the removal of his executrix, were not entitled of right to a jury trial, since the power of removal is conferred upon the court, not on a jury. (page 66.)

3. EXECUTORS AND ADMINISTRATORS—REMOVAL—EVIDENCE.  Where heirs at law, also legatees and devisees of a decedent, sought the removal of his executrix, his widow, on the ground of want of integrity, the refusal of the probate court to consider as evidence the judgment in a former action by the widow's coexecutor against her, in which he sought to compel her to deliver up a note which he claimed was payable to her husband, but which she claimed was payable to her, denying that she had accomplished such result by adding "s" to the "Mr." before the name of her husband, in which action verdict and judgment went for the plaintiff, was erroneous.  (Page 66.)

4. EXECUTORS AND ADMINISTRATORS—APPOINTMENT OF INTERESTED PERSON.  A person is not disqualified to act as executor or administrator merely because he claims property which is also claimed by the estate.  (Page 72.)

5. EXECUTORS AND ADMINISTRATORS—APPOINTMENT OF INTERESTED PERSON.  When the claims of the executor or administrator to a decedent's property are resisted by the estate and litigation follows, the conflict in interests may become so serious that all propriety of the interested person to act as representative ceases. (page 72.)

6. EXECUTORS AND ADMINISTRATORS—REMOVAL—APPOINTMENT OF SUCCESSOR—STATUTE.  Under Comp. Laws 1907, section 3839, pro-

[1]*Honerine, etc., Co.* v. *Tallerday, etc., Co.,* 30 Utah, 449; 85 Pac. 626; *Winnovich v. Emery,* 33 Utah, 345; 93 Pac. 988; *In re Owen's Estate,* 30 Utah, 351; 85 Pac. 277.

viding that, in case of removal of one of several executors, the court, if deeming it necessary, may appoint a successor, or permit the remaining executor to complete the execution of the trust, where a testator nominated his second wife as executrix and a son by his first wife as executor, the executrix representing the interests of herself and children, and the executor representing the interests of the children of the first wife, upon the removal of the executrix for incompetence, and want of integrity the appointment of an impartial successor to her was proper.   (Page 74.)

7.  EXECUTORS AND ADMINISTRATORS—REMOVAL BY APPOINTING POWER. The power of the court which appointed an executor or administrator to remove him for misconduct or to refuse to remove him, is subject to the limitations of a sound legal discretion, and removal could not be denied by such court for the representative's misconduct and want of integrity, which had been judicially established by the judgment in her coexecutor's action against her to secure a note payable to the estate.   (Page 75.)

Appeal from District Court, Fourth District; Hon. *A. B. Morgan,* Judge.

Application by Lacy H. Farnsworth and Emma J. Turner for the removal of Ruth Hatch as executrix of the last will and testament of Abram Hatch, deceased.

Judgment for defendant.   Plaintiffs appeal.

REVERSED, and cause remanded, with directions.

*E. A. Walton* and *Howat, Macmillan & Nebeker* for appellants.

*Rawlins, Ray & Rawlins* for respondent.

FRICK, J.

Lacy H. Farnsworth and Emma J. Turner, as heirs at law and as legatees and devisees of Abram Hatch, deceased, hereinafter styled appellants, made application to the district court of Wasatch county, while acting as a probate court, to remove Ruth Hatch, hereinafter called respondent, as executrix of the last will and testament of said Abram Hatch, de-

ceased.  Said Ruth Hatch was nominated as executrix in
the last will of said deceased jointly with one Abram C.
Hatch, and thereafter both were duly appointed joint execu-
trix and executor by said court, and both qualified and have
ever since acted as such.  We remark that respondent was
the second wife of said Abram Hatch, deceased; he having
been married before he married her.  By his first wife he
had five children, the two appellants and Abram C. Hatch
being three of the five, and by his second wife he also had five
children, who are still living.  It is claimed that the deceased
in his last will appointed Abram C. Hatch as executor to
represent the children of the first wife, and that he appointed
the respondent as executrix, so that she might represent her-
self and her five children. ˙ Considerable feeling and diversity
of opinion has developed between the respondent and Abram
C. Hatch while acting as executor and executrix of the will
aforesaid.

The application for removal is based on Comp. Laws 1907,
section 3837, which, so far as material, reads as follows:
"The court may at any time suspend any administrator
or executor; and may, upon citation, revoke the letters of any
*  *  *  executor or administrator for neglect, mismanage-
ment, waste, embezzlement, incompetency, incapacity, or be-
cause of conviction of an infamous crime, or for any other
reason deemed sufficient by the court."

The appellants, in substance, charged respondent with in-
competency, mismanagement, want of integrity, which, it was
alleged, had been judicially established, and that she claimed
large amounts of property which belonged to the estate, and
which she had refused, and still refuses, to inventory, and
that her personal interests were in conflict with the interests
of said estate to such an extent as to incapacitate her to act
as executrix, etc.  The respondent appeared and answered
the application.  She denied the charges, and set up various
matters in defense which it is not necessary to state in detail.
The evidence produced at the hearing for and against the
application is so voluminous and of such a nature that we
shall, during the course of this opinion, merely refer to such

parts thereof as are deemed material to an understanding of the points decided.

The court made findings of fact and conclusions of law in favor of respondent, and entered a judgment or order dismissing the application, and the appellants present the record to this court, and ask us to reverse the order or judgment aforesaid. Appellants' counsel, among other things, contend that the findings are not sustained by the evidence, that they are contrary thereto, and that the order or judgment is contrary to law. Respondent's counsel, however, suggests that this court is without jurisdiction, for the reason that no appeal lies from an order or judgment dismissing the application and refusing to remove the respondent as executrix. Our Constitution (article 8, section 9), after providing for appeals generally, further provides:

"Appeals shall also lie from the final orders and decrees of the court in the administration of decedent estates, * * * as shall be provided by law."

The statute (Comp. Laws 1907, section 3300) is practically a transcript of the constitutional provision just referred to. We are of the opinion that the order or judgment appealed from in this case is a final order within the rule laid down by the court in *Honerine, etc., Co.* v. *Tallerday, etc., Co.,* 30 Utah, 449, 85 Pac. 626, and *Winnovich* v. *Emery,* 33 Utah, 345, 93 Pac. 988. Such must also have been the conclusion reached by this court in deciding the appeal *in re Owen's Estate,* 30 Utah, 351, 85 Pac. 277, where an appeal was taken from an order refusing to revoke the letters of administration which had been granted to one who had been prematurely appointed by the probate court of Salt Lake County. The application was there made under another provision of section 3837, *supra,* and this court reversed the order of the lower court, and in effect directed that court to remove the appointee. While the question of jurisdiction was not directly discussed in that case, yet it was necessarily involved, and that decision is therefore decisive of the question here.

The first assignment argued by appellants' counsel is that the lower court erred in refusing appellants a jury trial. We cannot yield assent to that contention. The power,

as well as the discretion, to remove an executor, is 2 conferred upon the court, and not upon a jury. The power may not be exercised arbitrarily, nor should it be arbitrarily withheld. Much must be left to the sound legal discretion of the court. This seems to be the universal rule. Schouler's Ex'rs and Adm'rs (2d Ed.) section 154; 1 Woerner's Am. L. of Adminis. (2d Ed.) section 269. If a party filing an application for removal is entitled to a jury trial, then the accused administrator or executor must likewise be entitled to the same, and hence a jury might, by their verdict, retain in office one who, for various reasons, may be thoroughly unfitted to discharge the trust, or they may remove one who is manifestly qualified to act. Moreover, the inquiry on such an application is, in its nature, equitable rather than legal. The court committed no error in refusing appellants a jury trial.

One of the principal errors assigned relates to the exclusion of evidence which was offered at the hearing in support of the application, and which, counsel contend, judicially determined the unfitness of respondent to longer serve as executrix. The question presented for review upon the 3 assignment just referred to arose as follows: Some time in 1912, after the appointment of respondent as executrix, she was requested to produce and to inventory as part of the estate of Abram Hatch, deceased, a promissory note for $2,000. She refused to inventory said note as part of said estate, claiming that it belonged to her. An action was commenced by Abram C. Hatch, as executor of the last will of said Abram Hatch, deceased, against the respondent, as executrix, and also in her individual capacity, for an accounting and for possession of said note, and, if possession could not be had, then for the face value thereof, with interest. While that action apparently was to obtain possession of the note, yet the facts with regard to the ownership thereof and the fact that respondent wrongfully claimed ownership of said note were fully set up. Among other things it was alleged that the respondent had altered said note by changing the name of the payee, "Mr. Abram Hatch," to read "Mrs. Abram Hatch," by adding the letter "s" to the

word "Mr.," and had thus made the note payable to herself. It was also alleged that by reason of the failing health and loss of memory and general mental incompetency of the deceased during his later years respondent had obtained management and control of the deceased's business affairs, and had obtained possession and control of all of the private papers, including the note aforesaid, and that she "wrongfully retained the possession of said promissory note, and wrongfully and unlawfully claims to be the owner thereof." The respondent denied all the material allegations of the complaint in that action. A trial to a jury resulted in a verdict in favor of the plaintiff in said action, upon which the court entered judgment against the respondent here, requiring her to deliver up said note to the estate, which she did.

The respondent, in her answer to the application for removal, while denying the legal effect claimed by appellants for the verdict of the jury and judgment in that case, nevertheless admits the verdict and judgment and her acquiescence therein. For the purpose of proving the legal effect of that verdict and judgment, and to prove that the respondent had, by the verdict of the jury in that case, been found guilty of misconduct with respect to said note, the appellants offered in evidence the judgment roll, including the pleadings, in that case, and in connection therewith offered the requests to charge and also the charge given by the court to the jury. The foregoing evidence was offered, in connection with other evidence, for the purpose of showing the matters in issue and the questions that were presented to the jury for determination. The testimony of the respondent given in her own behalf, and that of Abram C. Hatch and others which had been adduced on behalf of the estate, was also offered, for the purpose of showing what was in fact litigated and determined in that case. Respondent's counsel objected to all of said offers "on the ground that it is immaterial, irrelevant, and incompetent." The court excluded all of the proffered evidence, all of which, being in the form of documentary evidence, that is, in typewriting, it was, by agreement of counsel, either attached to or made a part of the bill of exceptions in this case by reference. In view, therefore, that we have held this an

equitable proceeding, we, on counsel's suggestion, have considered all of the proffered evidence the same as if it had been admitted in evidence. and considered by the trial court. We have already referred to the pleadings in that case, and we do not deem it necessary to specifically refer to particular parts of the evidence, since the questions which were raised by the evidence are sufficiently reflected in the court's charge to the jury. The court, among other things, charged the jury as follows:

"In order for the plaintiff to recover in this action the burden is on the plaintiff to prove by a preponderance of the evidence: First. That the note in controversy was made, executed, and delivered by A. K. Farnsworth and Lacy Farnsworth to Mr. Abram Hatch. Second. That said note, after its execution, and delivery to said Abram Hatch, if you find from a preponderance of the evidence, it was executed in favor of and delivered to said Abram Hatch, was changed by pen writing so as to make it read, in the body thereof, by the addition of the letter 's' to 'Mr.,' before the name of Abram Hatch, payable to Mrs. Abram Hatch, and that said change was without the knowledge or consent of said Abram Hatch. Third. That the defendant, Ruth Hatch, still unlawfully withholds and retains said promissory note from possession of the plaintiff in this case. If you find from a preponderance of the evidence that the plaintiff has proved all of the above points mentioned in this instruction, then I charge you, gentlemen of the jury, that the plaintiff is entitled to recover in this action. If you find that the plaintiff has not proved by a preponderance of the evidence on any one of the above-mentioned points, then I charge you, gentlemen of the jury, that you should find for the defendant no cause of action.

"Defendant has admitted that the check given to A. K. Farnsworth for the said note was drawn on the account of Abram Hatch, and that the interest paid on said note was credited to the account of Abram Hatch. This evidence is material only in determining whether or not the note was originally made payable to Mr. Abram Hatch or Mrs. Abram Hatch.

"You are further instructed that if you find, from a pre-
ponderance of the evidence introduced, that the note in ques-
tion was altered after its execution and delivery, without the
knowledge or consent of A. K. Farnsworth or Lacy A. Farns-
worth, you must also find from a preponderance of the evi-
dence that the said alteration was without the knowledge
or consent of said Abram Hatch, in order to entitle the plain-
tiff to recover:

"If you find from a preponderance of the evidence that the
note in question was made payable to Mrs. Abram Hatch,
and was so drawn by or with the consent of Abram Hatch,
then your verdict should be for the defendant, although you
may find that it was so made payable without the knowledge or
consent of Lacy A. Farnsworth."

The jury, having found for the plaintiff, must have found
the following facts against the respondent: (1)  That the
$2,000 note there in question belonged to the estate of Abram
Hatch deceased and not to respondent; (2) that said note
was altered as indicated in the instructions above set forth;
and (3) that respondent unlawfully withheld said note from
the possession of said estate. One of the questions tried out
before the jury was whether said note had been made pay-
ale to "Mr." Abram Hatch, or to "Mrs." Abram Hatch.
Respondent contended it was originally made payable to her
as "Mrs." Abram Hatch, and the plaintiff in that case in-
sisted that it was originally made payable to "Mr." Abram
Hatch, and by respondent changed so as to make it payable
to "Mrs." Abram Hatch—that is, herself—by adding an "s"
to the word "Mr." That precise question was submitted to
the jury, and they found the issue against respondent, and
in favor of the plaintiff. Appellants contend that the finding
of the jury and judgment in that case against respondent is
evidence of her misconduct, and therefore evidence of her
unfitness to further act as executrix of said estate. As be-
fore stated, respondent's counsel objected to said evidence,
and the whole thereof, upon the grounds before referred to.
Counsel now contend stating their contention in their own
words:

"The judgment rendered in favor of A. C. Hatch executor

against the defendant [respondent]   *   *   *   was clearly
immaterial and incompetent.''

They insist that the objection is well taken, for the reason
that neither the parties nor the issues are the same in this
proceeding that they were in the former action. They con-
tend that the appellant Lacy H. Farnsworth, as one of the
makers of said note, was not and is not bound by the judg-
ment in the former action. Again, giving their contention
in their own language, they say:

''If A. C. Hatch, as executor, should now sue Mrs. Farns-
worth to recover the amount of this note, she would have the
undisputed right, if she could, to prove that the note was
given to and [was] the property of Ruth Hatch [the re-
spondent], and had been paid to her, and that the judgment
to the contrary rendered in a case to which she was not a
party could not preclude her from making this proof. Es-
toppels must be mutual and reciprocal, and if one party is
not bound the other cannot be.''

It seems to us that counsel were betrayed into making the
foregoing statement by the assumption that Mrs. Farns-
worth was not represented in the former action, because she
was not named as a party thereto. A. C. Hatch sued the
respondent in his representative capacity. As executor of
the last will of Abram Hatch, deceased, A. C. Hatch repre-
sented all of the legatees and devisees named in said will, in
so far as the matters litigated affected such devisees and lega-
tees. Both of the appellants are legatees and devisees under
the will. They both sue in this application as such legatees
and devisees, and both were represented in the former action
as such. They, therefore, were both represented by the execu-
tor in such action, and both are bound by the judgment ren-
dered therein. Would counsel seriously contend that, if the
findings and judgment in the note case had been in favor
of respondent, appellants could again sue her to recover said
note? We think not. Appellants are bound by that judg-
ment, just the same as A. C. Hatch is bound thereby, and as
respondent is bound.

Counsel were apparently further led astray by overlook-
ing the fact that, although one may be bound in a representa-

Appeal from Fourth District.

tive capacity, he is not necessarily also bound in his individual capacity. Such is the case here. Appellants, although bound by the judgment as legatees and devisees, yet may not also be bound as to matters which merely concern them as individuals or in an individual capacity, and the same is precisely true of respondent. In 2 Black on Judgments (2d Ed.) section 534, the author adopts and quotes a statement as to who are parties from Mr. Justice Lumpkin, which is taken from the case of *Brown* v. *Chaney*, 1 Ga. (1 Kelly) 412, as follows:

"Under the term 'parties,' the law includes all who are interested in the subject-matter of litigation, who will be gainers or losers by its result, and for or against whom the record of the [former] proceeding might be adduced in evidence in another trial; those who have the right to be heard, and to offer testimony and examine the witnesses. 'Privies' are those who are so connected with the parties in estate, or in blood, or in law, as to be identified with them in interest, and consequently to be affected with them by the litigation, as lessor or lessee, heir and ancestor, executor and testator. All others not included in either of these classes are, of course, strangers."

That the issues in the former action and the present one are the same, within the rule which permits a former judgment to be used as evidence, is also made clear by the author of 2 Black on Judgments, section 614. In discussing what constitutes the matter in issue, the author there says:

"But what is the 'matter in issue,' within the meaning of this rule? Is the test to be furnished solely by the issues framed in the suit, or also by the course and nature of the evidence? Suppose that a question arises on the trial, which, *per se*, has nothing to do with the cause of action, and is not mentioned in the pleadings, but which materially affects the stated issue, and must be determined before the issues can be found either way. Suppose, further, that such question, thus becoming necessary to the decision of the cause, is controverted between the parties, and is made the subject of evidence, argument, and instructions, and that its resolution in effect determines the verdict of the jury."

The author then proceeds to discuss the variant views of the courts, and proceeds further:

"The doctrine of *res judicata* does not rest upon the fact that a particular proposition has been affirmed and denied in the pleadings, but upon the fact that it has been fully and fairly investigated

and tried—that the parties have had an adequate opportunity to say and prove all that they can in relation to it, that the minds of court and jury have been brought to bear upon it, and so it has been solemnly and finally adjudicated."

In view of the foregoing statements, it would seem to require no argument on our part to show that both the parties and the issues of the two proceedings in question were such as to clearly bring the proffered evidence within the rule which authorizes the admission of a judgment in a former proceeding as evidence of the facts which were judicially determined in that proceeding. The district court, therefore, clearly erred in refusing to consider the proffered evidence.

Now, what is the effect of that evidence? We think it is very clear that the jury found that the respondent claimed the $2,000 note as her own without any authority or right; that she wrongfully attempted to make it appear that it was made payable to herself, when in truth such **4, 5** was not the fact. Entirely apart from the physical condition of the note, however, there were other strong facts and circumstances from which the jury could have arrived at such a conclusion. The deceased had made very liberal provisions for the respondent in his will. Besides that, he had made large and valuable gifts of property to her in addition to the bequests in the will. Then, again, it was conceded that the money represented by the $2,000 note was advanced by the deceased. Respondent, however, claimed it was an additional gift from the deceased to her. In addition to all the gifts and all of the bequests, it was also shown at the hearing that the respondent still claims additional gifts of property, and further claims large amounts of property, which are also claimed by her co-executor as belonging to the estate. There is at least one other action for an accounting pending against the respondent. Under these circumstances the jury might well have believed that the respondent was not dealing fairly with the estate and that her claims were unjust and unfounded.

Her counsel, however, further contend that the mere fact that respondent claims property which is also claimed by the estate, or may ultimately be found to belong to the es-

tate, does not disqualify or unfit her to act as coexecutrix, since her coexecutor can, and no doubt will, guard the interests of the estate. Indeed, it is claimed that he may commence and prosecute further actions against respondent to protect the interests of the estate. The following authorities are cited in support of the foregoing contention: *In re Bauquier's Estate,* 88 Cal. 302, 26 Pac. 178, 532; *In re Brundage's Estate,* 141 Cal. 538, 75 Pac. 175; *In re Healy's Estate,* 137 Cal. 474, 70 Pac. 455; *Clark* v. *Patterson,* 214 Ill. 533, 73 N. E. 806, 105 Am. St. Rep. 127. The first two cases cited arose on applications for the appointment of administrators. The court held that the mere fact that the petitioners claimed property that was likewise claimed by the estates constituted no disqualification under the statute to serve as administrator. To the same effect is the case from Illinois, namely, *Clark* v. *Patterson, supra.* It is quite true that, as a general rule, those who are directly interested in the estates are usually selected and appointed as administrators or executors. Even a creditor is a proper person to act in such a capacity. Again, a person may not be disqualified merely because he claims property which is also claimed by the estate. But when the claims of the representative are resisted by the estate, and litigation ensues, then the interest between the estate and the representative may become so conflicting and so serious that it is no longer proper for the representative to remain in office. That such may be the result is very strongly intimated in the decisions just referred to, and it is there suggested that, if such a condition should arise, the courts possess ample power to remove the representative for that reason alone. *In re* Healy's Estate, *supra,* was an application for removal, the same as here, and although the facts there were clearly insufficient to justify a removal upon the ground of conflicting interests, or otherwise, yet two of the justices dissented.

Upon the other hand, counsel for the appellants refer us to cases in which the courts have removed administrators or executors upon the ground that their interests conflicted with those of the estates they represented. Among the cases cited upon that subject are the following: *In re Gleason's Es-*

*tate*, 17 Misc. Rep. 510, 41 N. Y. Supp. 418; *Marks* v. *Coats*, 37 Or. 609, 62 Pac. 488; *Putney* v. *Fletcher*, 148 Mass. 247, 19 N. E. 370; *Mills* v. *Mills*, 22 Or. 216, 29 Pac. 443; *Kellberg's Appeal*, 86 Pa. 129-133; *In re Wallace*, 68 App. Div. 649, 74 N. Y. Supp. 33. In *Marks* v. *Coats, supra*, the court, in passing upon the question, says:

> "One whose personal interests are in conflict with his duty as administrator is not a proper person to hold the office."

In *Putney* v. *Fletcher, supra*, the Supreme Judicial Court of Massachusetts, in the course of the opinion, said:

> "An executor or administrator is deemed unsuitable when he has any conflicting personal interest which prevents him from doing his official duty."

To the same effect are the other cases last above cited. In the very nature of things such must be the law. The old proverb, "No man can serve two masters," or as the Spanish put it, "He who has two masters to serve must lie to one of them," is as true now as it ever was, and is as applicable in the administration of estates as elsewhere. Indeed, in such matters courts should be very careful to prevent the claimants or creditors from passing upon their own claims, where such claims are being contested. In the nature of things it is not possible for any one to act with perfect impartiality and fairness in a matter in which he claims valuable and important interests. That fact is universally recognized, and especially in our courts of justice, and the only reason that it is not always strictly applied is because it is impractical to do so.

But, say counsel for respondent, conceding that the foregoing statements and observations are correct, yet they have no application here, because there are two executors, one representing the interests of respondent and her children, and the other representing the interests of the 6 children of the first wife. There is, however, in fact but one estate, and all interests are best subserved by a speedy, prudent, and impartial administration and distribution of the estate. This record bristles with facts which demonstrate that the respondent objects to everything that is proposed by

her coexecutor, and with all her power resists any claim made by the estate against her. But suppose there is a diversity of interests here, which would make it wise to appoint two executors, our statute clearly provides for such emergency without retaining in office one whose personal interests are manifestly in conflict with those of the estate he represents. Comp. Laws 1907, section 3839, so far as material, provides:

"In case of removal, * * * of one of several executors or adiminstrators, the court, if it deems it necessary, may appoint a successor, or may permit the remaining executor, * * * to complete the execution of the trust."

While the question of whether another executor should be appointed is a matter for the probate court in the first instance to determine, and upon which we disclaim any desire to even intimate what that court should do, much less direct it to act, yet, under all the facts and circumstances of this case, it may not be improper to suggest that it seems to us that it would be quite proper for the court to appoint some suitable and proper person, and one who is satisfactory to the parties in interest, if possible to do so, to act in the place of the respondent.

It is, however, also insisted that the matter of removing or refusing to remove an executor or administrator is a matter which should be left to the discretion of the court who appointed him, and under whose direction such officer must act. This, no doubt, is both good sense and good      7
law, and we have no desire to depart from so wholesome a rule. But that power, like all other discretionary powers, has its limitations. In view of the facts and circumstances which appear of record, and which we deem it unnecessary to set forth in detail, we are clearly of the opinion that the limits of a sound legal discretion have, in this case, been reached and passed. There are a number of things appearing in this record which the trial court seems to have overlooked or disregarded. The facts found by the jury, and to which special reference has already been made, the court entirely ignored, notwithstanding that they had been judicially established. No court has the right to ignore material facts which are judicially established while acting as

a court of justice. True, the judge, acting as an individual, like all other individuals not parties to an action, may, with perfect propriety, and with or without reason, refuse to believe any or all of the evidence produced against an individual on trial; but, whole acting as a court, he must make his judicial acts conform to the facts judicially established, regardless of his own views in the premises. Facts once judicially established are binding upon the courts, as well as upon the parties. If the trial court had good cause for believing that the jury in the note case had wrongfully, and without legal or any cause, condemned the acts of respondent, it was its duty to correct the wrong by setting aside their verdict and by granting respondent a new trial. This was not done, but the court affirmed the findings of the jury by entering judgment thereon. Having done that, he may not ignore the facts judicially established in that proceeding, in so far as those facts are material and competent evidence in this one. Neither may we do so. Under all the facts and circumstances developed in this proceeding, the lower court should at least have requested respondent to surrender the office of executrix, and, upon her refusal to do so, should promptly have removed her from office. In all such cases the acts of the court should always be prompted by the best interests of the whole estate, rather than by the interests or the claims of one or any number less than the whole number of those interested therein.

In view of what has been said, we are clearly of the opinion that the respondent is disqualified to further act as executrix of the estate in question, and that she should therefore no longer be permitted to discharge the duties of that office.

It is therefore ordered and adjudged that the order or judgment of the district court of Wasatch county, dismissing the application, be and the same hereby is reversed, and the cause is remanded to that court, with directions to set aside its findings and judgment, and to make findings in accordance with the views herein expressed, and in case respondent refuses to voluntarily surrender said office within ten days from the time the remittitur of this court is transmitted to the court below, then to enter an order or judgment removing her as

such executrix and to proceed to administer the estate as required by law. It is further ordered that the costs of this proceeding be paid out of the estate.

STRAUP, C. J., and McCARTY, J., concur.