## In re RINIO'S ESTATE.

(No. 7,191.)

(Submitted March 6, 1934.  Decided March 16, 1934.)

[30 Pac. (2d) 803.]

*Mr. W. L. Bullock* and *Mr. D. W. Doyle,* for Appellant, submitted a brief; *Mr. Doyle* argued the cause orally.

*Messrs. Murch & Wuerthner,* for Respondent, submitted a brief; *Mr. Julius J. Wuerthner* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Gottlieb B. Rinio and Hans Kristofferson, copartners in the meat business at Valier, Montana, died simultaneously on December 2, 1929, whereupon C. H. Kester, a banker, took over the business as a voluntary trustee, and was appointed administrator of the estate of each deceased partner. Kester contracted to sell certain real estate to Frederick Rinio, a brother of Gottlieb, for $10,800, of which $3,600 was paid and $1,800 deposited to the credit of each estate. Kester sold Rinio sixteen head of cattle and certain hams and bacon, but, owing to disagreement as to the price, no payment was made. Rinio lived in a house belonging to the estate of his deceased brother, but paid no rent to the estate, and, perhaps, collected some rent on another house.

Kester was removed as administrator of the Rinio estate (*In re Rinio's Estate,* 93 Mont. 428, 19 Pac. (2d) 322), and Frederick Rinio brought action against each of the estates for the cancellation of his contract and the return of his down payment, on the ground that the property belonged to the partnership and, consequently, the administrator's contract was void.

The heirs of the Rinio estate are Frederick Rinio and two sisters, in Germany, from whom he holds powers of attorney. Frederick Rinio nominated his son William for administrator, and William filed the usual petition for letters; whereupon two creditors of the estate filed objections to the appointment of William on the grounds of want of understanding and adverse interest, alleging that William was "entirely dominated" by his father, and, as a consequence, the creditors would

have no protection against the cancellation suit; they prayed that one Charles Akofer be appointed.

The only statutory qualifications of such an applicant are that: "No person is competent or entitled to serve as administrator * * * who is 1. Under the age of majority. 2. Not a bona fide resident of the state * * * . 3. Convicted of an infamous crime. 4. Adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity." (Rev. Codes 1921, sec. 10072.)

The applicant proved that he was twenty-four years of age, ▆▆▆ had been in the state for eight years, and was a graduate of the Anaconda High School. His showing as to "understanding" was such that the trial court declared: "This applicant I think has shown that he has more than ordinary intelligence." The applicant testified that he had had some experience in business management and bookkeeping, but Kester and Akofer, the only witnesses for the objectors, doubted that his experience in this regard was sufficient for the discharge of the duties of the office. No such knowledge is required to qualify an administrator in any case. (See 1 Bancroft on Probate Practice, 426.)

The applicant denied the charge of "domination," and there was no evidence introduced to show more than a friendly feeling between father and son; the former living in Valier and the latter in Conrad. The applicant testified that, if appointed, he would take all necessary steps to collect any amount due from his father to the estate. This he would be obliged to do or lay himself liable to removal, on application of creditors. (1 Bancroft on Probate Practice, 574; *Bank of Montreal* v. *Buchanan*, 32 Wash. 480, 73 Pac. 482.)

Under section 10068, Revised Codes 1921, Frederick Rinio ▆▆▆ was entitled to letters, and, on his written request, William was entitled thereto (sec. 10082, Id.), and the fact that the father had an adverse claim against the estate did not render either "incompetent." (*In re Blackburn's Estate*, 48 Mont. 179, 137 Pac. 381; *In re Rollins' Estate*, 189 Cal.

392, 208 Pac. 280.)   However, in such circumstances the court, in the exercise of a wide discretion, may deem the applicant not a proper person to hold the office (*Putney* v. *Fletcher,* 148 Mass. 247, 19 N. E. 370; *Marks* v. *Coats,* 37 Or. 609, 62 Pac. 488), and may, when necessary or expedient to protect the estate or creditors, either refuse the appointment or remove an administrator (*In re Dolenty's Estate,* 53 Mont. 33, 161 Pac. 524, 525; *In re Infelise's Estate,* 51 Mont. 18, 149 Pac. 365; *Farnsworth* v. *Hatch,* 57 Utah, 62, 151 Pac. 537, 541), although there is no Code provision regulating the situation. (*Luckey* v. *Superior Court,* 209 Cal. 360, 287 Pac. 450, 454.) The propriety of appointing such a person depends upon the degree of adverse interest and animosity.   (1 Bancroft's Probate Practice, 431, citing *In re McLure's Estate,* 63 Mont. 536, 208 Pac. 900, and *In re Rouse's Estate,* 71 Okl. 296, 176 Pac. 954.)   It follows that the appointment or rejection of the applicant rested in the sound discretion of the court and its action can be reversed only on a clear showing of abuse of discretion.   (*In re Infelise's Estate,* supra.)

The most that the objectors could show as to the defense of the Rinio suit was an apprehension that their interests would not be protected, and the admission of the applicant that he was advised by his counsel, who also represented his father, and believed that the contract in question was void.

Counsel stated in open court that the suit would not be pressed but would abide the result in Rinio's suit against the Kristofferson estate, and the applicant testified that he would return the $1,800 to his father only on advice of counsel.   Of course, the money could be paid back only after Rinio secured a judgment and it became final, and then only with the approval of the court.   The administrator must account to the court from time to time and must secure the approval of his final account before he and his bondsmen can be released, and these protesting creditors may file exceptions to any account filed "and contest the same."   (Secs. 10288–10301, Rev. Codes 1921.)

On the record, a reversal is not warranted on the ground of a "clear abuse of discretion," and the order from which the appeal is taken must be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.