## In re GRAFF'S ESTATE
No. 8652
Submitted September 24, 1946. Decided November 16, 1946.
174 Pac. (2d) 216

Mr. J. F. Emigh and Mr. H. D. Carmichael, both of Butte, for appellant.

Mr. M. J. Doepker, of Butte, for respondent.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Appeal from an order sustaining objections of Edna Firebaugh to the appointment of Carl Graff as administrator of the estate of Edward Graff, deceased, and granting the petition of Mary Walsh, public administrator, for letters of administration of said estate.

On June 5, 1945, Carl Graff, the appellant, filed his petition for letters of administration of said estate, listing certain personal property of the stated value of $5,550. On June 30, 1945, Edna Firebaugh, a daughter of the deceased, filed her written objection to the said petition on the ground that the petitioner was incompetent to act as administrator by reason of his want of integrity in that "the said Carl Graff, having been entrusted with the legal title to valuable real property belonging to Edward Graff, as trustee for himself and your objector, Edna Firebaugh, has repudiated said trust and wrongfully claims sole ownership in himself in said real property and in his said petition for letters of administration has willfully failed to list said property among the assets of the estate of Edward Graff, deceased.

"That said Carl Graff, while lawfully bound to transfer the legal title to said real property as trustee, to Edward Graff, as trustor, has been guilty of want of integrity in this; that after repeated demands on him by the said Edward Graff, during the years 1944 and 1945, to deed said property to Edward Graff, refused and wrongfully claimed said property as his own."

The real property involved consists of two lots in the city of Butte on which is located an apartment house and a residence, together with furniture and fixtures, alleged to have a value in excess of $6,000.

On July 11, 1945, Mary Walsh, as nominee of Edna Firebaugh, filed her petition for letters of administration, listing property including the real estate mentioned, of the total value of $12,100.

Thereafter Carl Graff filed his answer to the objections of Edna Firebaugh, denying the material allegations thereof and

asserting lack of jurisdiction of the trial court sitting in probate, to try and determine the issues involved which ultimately affect and determine the title to the property. Thereafter Carl Graff filed his objections to the appointment of Mary Walsh as administratrix based principally on the ground that she is not entitled to such appointment inasmuch as Carl Graff, a son of the deceased and a resident of the state of Montana and competent to act, has presented his petition for such appointment.

Both petitions and the objections thereto were set for hearing and evidence adduced by both parties and the matter was submitted to the court on July 21, 1945. Thereafter the district court made its order sustaining objections of Edna Firebaugh to the appointment of Carl Graff and overruling the objections of Carl Graff to the appointment of Mary Walsh, and appointing Mary Walsh as administratrix of the estate. Such order is based upon the finding "that the said Carl Graff is wanting in integrity in view of his recent dealings with and treatment of his father, the said deceased, with respect to the real property described in the said petition of Mary Walsh; that the said Carl Graff asserts an interest in and to said real property adverse to that of the estate of said Edward Graff, deceased, therein."

Appellant specifies 20 errors of the trial court, consisting of the admission of testimony over the objections of appellant. As stated by appellant, the question for determination is whether or not evidence adduced at the hearing, most of which is alleged to be inadmissible, is sufficient to establish the necessary want of integrity of Carl Graff and sufficient to justify the court's refusal to issue letters of administration to him. Appellant's contention is that the court was called upon to try title to the real estate involved and that it was impossible for the court to rule upon Graff's want of integrity without first trying title to such real estate. He argues that the objector's claim that appellant is holding the real estate in trust for himself and Edna Firebaugh, while appellant claims to be the owner in fee simple, the trial court must have found objector's claim to be true and

that title to the real estate vested in the heirs of the deceased, to sustain a finding of want of integrity on the part of appellant.

Section 10072, Revised Codes of 1935, provides:

"No person is competent or entitled to serve as administrator or administratrix who is: * * *

"4. Adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity."

Under the provisions of this section, after hearing, the district court found and adjudged Carl Graff incompetent to act as administrator by reason of his want of integrity. We recognize the established rule that in this jurisdiction a trial court, sitting in probate, is without power to try title to real property. Appellant insists that the trial court's finding of want of integrity is by necessary implication also a finding that the title to the involved property is as alleged in the objections of Edna Firebaugh, and its order a determination of such title. With this contention we cannot agree. While the evidence upon which the order was based necessarily developed facts bearing upon the question of ownership, that question was not attempted to be determined. From the facts developed, the trial court merely determined the existence of such a want of integrity on the part of Carl Graff, and the assertion by him of an interest adverse to the estate, as to render him incompetent to act as administrator. We are unable to agree that the order in question would in any way affect the outcome of any subsequent action to determine the title, whether or not the estate or the administrator thereof should become parties thereto. The fact that the son of the deceased may have had a claim adverse to the estate did not, of itself, render him incompetent to act as administrator. The matter of the granting or refusal of his application was within the discretion of the trial court, and its order, in the absence of showing of abuse of such discretion, will not be disturbed.

In Re Rinio's Estate, 96 Mont. 344, 30 Pac. (2d) 803, 804, this court said:

"Under section 10068, Revised Codes 1921, Frederick Rinio was entitled to letters, and, on his written request, William [Frederick's son] was entitled thereto (section 10082, Id.), and the fact that the father had an adverse claim against the estate did not render either 'incompetent.' In re Blackburn's Estate, 48 Mont. 179, 137 Pac. 381; In re Rollins' Estate, 189 Cal. 392, 208 Pac. 280. However, in such circumstances the court, in the exercise of a wide discretion, may deem the applicant not a proper person to hold the office (Putney v. Fletcher, 148 Mass. 247, 19 N. E. 370; Marks v. Coats, 37 Or. 609, 62 Pac. 488), and may, when necessary or expedient to protect the estate or creditors, either refuse the appointment or remove the administrator (In re Dolenty's Estate, 53 Mont. 33, 161 Pac. 524, 525; [In re Infelise's Estate, 51 Mont. 18, 149 Pac. 365;] Farnsworth v. Hatch, 47 Utah 62, 151 Pac. 537, 541), although there is no Code provision regulating the situation. Luckey v. Superior Court, 209 Cal. 360, 287 Pac. 450, 454. The propriety of appointing such a person depends upon the degree of adverse interest and animosity. 1 Bancroft's Probate Practice, 431, citing In re McLure's Estate, 63 Mont. 536, 208 Pac. 900, and In re Rouse's Estate, 71 Okl. 296, 176 Pac. 954. It follows that the appointment or rejection of the applicant rested in the sound discretion of the court and its action can be reversed only on a clear showing of abuse of discretion. In re Infelise's Estate, [supra.]' "

The trial court did not determine whether the property in ▉ dispute should or should not be included as an asset of the estate. Any such order would, of course, have been in excess of its powers, were the title in dispute. As is said in In re Dolenty's Estate, 53 Mont. 33, 161 Pac. 524, 529: "In his order approving the report, the district judge properly refused to charge the respondent with this as an asset of the estate, and thus to determine the ownership of the title.

"A district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within

the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred. (Citing cases.) Among the powers conferred by the part of the Codes relating to probate proceedings (part 3, tit. 12, c. 1) we do not find any provision authorizing the court, in connection with the settlement of estates to determine questions of title between the estate and persons claiming adversely to it. These questions must be determined in proper proceedings instituted for that purpose.''

Briefly, the material evidence in support of the objections to Graff's appointment may be summarized as follows: Prior to the month of May, 1930, Edward Graff had been advancing funds for a newspaper subscription contest, as a result of which he anticipated being sued. In order to protect his son Carl and daughter Edna, both minors, against loss, Edward Graff determined to deed the involved property to the son, and two deeds transferring title to Carl were prepared by his attorney, M. J. Doepker, on May 27, 1940. Edward and Carl were present when instructions for the preparation of the deeds were given. Both deeds were recorded the following day and were introduced in evidence. Mr. Doepker testified that at the May 27th conference it was decided that in the event a judgment was obtained against Edward, Carl ''would hold the title to the home and the flats so that he and his sister would have an assured income and an education.'' The same witness further testified to a further conversation between him and Carl early in 1945, there also being present Pauline Graff, Carl's wife: ''At that time I visited Carl Graff and told him that his father wanted to make a will leaving him and his sister equal shares in his property, his sister, Edna Firebaugh. I explained to Carl that according to their agreement at the time the deeds were made, he had agreed to deed the property back at any time his father wanted it. * * * Carl Graff stated he knew it was his father's property—that he didn't know whether he would deed it back or not. * * * And Carl said, 'Well, I'll let you know. My wife and I will talk it over and I'll let you know whether we will execute a deed or not.' * * * And then I was requested to return at a later date,

by Mr. Graff. * * * Later I came there [to Carl's home] when Carl was there alone and I had a conversation with him respecting deeding this property, and in that conversation I asked him if he had decided to deed the property to his father so that he could make a will such as I have outlined in my previous conversation, and he said he didn't think his wife would go for it.'' The witness testified that he reported this conversation to Edward Graff, who thereupon instructed him to prepare a suit against Carl and Pauline to recover the title, and before filing suit, to make one more effort to obtain a deed. Complaint in an action to quiet title in Edward was prepared, the affidavit being signed by Edward. Notice of lis pendens was also prepared, and signed by Edward. Suit was not filed because of Edward's death before the witness had an opportunity to again request Carl and his wife to execute a deed.

A Mrs. Meeney testified of a conversation with Carl: ''I asked Mr. Graff,—I went to the post office to see him because I got a letter from Edna. She wanted me to ask Carl if he really would pay her. So I went up to talk to him and he said as far as he was concerned, he was willing that she should have her share but his other relatives wouldn't sign, so his signature wouldn't do any good. May God strike me dead on the witness stand if he didn't tell me that.''

The record contains testimony that from 1932 to 1945, rentals from the flats were paid to Edward Graff and that he did all the repair and upkeep of the property; that Carl was seldom, if ever, seen about the property for at least four years prior to 1945. Carl Graff, over objection by his counsel, testified that he had never paid taxes on the property.

Appellant in his brief quotes extensively from 11 Cal. Jur. █ and California decisions cited, in support of several general rules affecting the question of incompetency to act as administrator, with which we agree. One principally relied on appears in 11A Cal. Jur., sec. 177, p. 263, as follows: ''The fact that the petitioner for letters claims property adversely to the estate, or is even defending a suit brought against him, on

behalf of the estate, does not of itself and without some reference to the honesty of the claim show a want of integrity; nor does the fact that the applicant claims property which it will take an action to decide, or the mere fact that he is alleged to be a trespasser on a part of estate lands; hence the fact that the surviving husband claims the entire estate as his own is not sufficient evidence of want of integrity.'' Assuming the correctness of this statement, it cannot help the appellant here. We think that the trial court was justified in finding, in effect, that the evidence shows far more than a mere adverse claim to the property by appellant. Such evidence supports a determination that the honesty of the claim is questionable, and is amply sufficient to justify the trial court's finding of want of integrity. The trial court may exercise a wide discretion in such determination, and no abuse of such discretion has here been shown.

Appellant's objections to the admissibility of evidence, as set forth in his specifications of error, are based mainly on its alleged tendency and purpose of establishing title to the involved property. Since we have held that its effect would not be such, so far as this proceeding is concerned, we hold that these objections are not meritorious. The sole question involved is that of the competency of appellant to act as administrator. The trial court's determination of his incompetency is supported by substantial evidence, and no abuse of its discretion is apparent.

The order appealed from is affirmed.

Mr. Chief Justice Lindquist and Associate Justices Morris, Adair and Angstman concur.