366 P.2d 977

In the Matter of the ESTATE of Hillard L. VOORHEES, deceased.

Betty HAYWARD, Beverly Clyde and Tracy Collins Trust Company (now Walker Bank & Trust Company), Administrator of the Estate of Hillard L. Voorhees, deceased, Civil No. 4784, Plaintiffs and Respondents,

v.

Pearl O. VOORHEES, Defendant and Appellant,

Hanson Land & Livestock Company, Intervenor and Appellant in Probate No. 2655.

No. 9400.

Supreme Court of Utah.

Dec. 12, 1961.

Fred H. Evans, Rich, Elton & Mangum, Salt Lake City, Carvel Mattsson, Richfield, for appellant.

Nielsen, Conder & Hansen, Salt Lake City, for respondents.

CROCKETT, Justice.

Mrs. Pearl Voorhees appeals from a decree that she convey certain property to the estate of her husband, Hillard L. Voorhees. The decree was entered as a result of a combined hearing in the probate proceeding and a civil suit wherein her daughters, Betty V. Hayward and Beverly V. Clyde, respondents herein, had sued her to accomplish that purpose. In addition, both Mrs. Voorhees and Hanson Land & Livestock Company appeal from orders for partial distribution of certain property of the estate to said daughters entered in the probate proceeding.

In 1940, Hillard L. Voorhees made deeds to his wife for certain real property consisting of the family home and farm located near Manti, Sanpete County, Utah; and to about 2,800 acres of pasture land, referred to as the "mountain ground," located a few miles northward in Sevier County. In 1953, just before taking an automobile trip, Hillard and Pearl informed their daughter Betty that they had executed instruments to convey this same property to her and her sister Beverly. There is no indication these were ever delivered. Shortly prior to Hillard's death on July 24, 1956, the mother, Pearl Voorhees, recorded her deeds.

After Mrs. Voorhees was appointed administratrix there was dispute over various matters between her and her daughters, including whether the deeds to her were ever delivered and whether the said real property should be included in the estate; and similarly over a Taylor Grazing Permit held in connection with the mountain ground which allowed the grazing of 1,870 head of sheep on federal lands. After the daughters petitioned to have her removed, Mrs.

Voorhees resigned, and subsequent to some further litigation and an appeal to this court,[1] Walker Bank & Trust Company was appointed and qualified as administrator. We here note that at a later time, she agreed that the home and farm should be included in the estate and thus any issue as to it had been disposed of. However, she insisted upon her personal ownership of the mountain ground and the grazing permit and refused to transfer them to the estate. Thereupon, as authorized by Sec. 75–11–18, U.C.A.1953, the daughters as heirs brought an action on behalf of the estate to bring that property into it.

In the meantime, on October 21, 1958, Mrs. Voorhees had contracted to sell to the Intervenor, Hanson Livestock "all of the right, title and interest of seller [Mrs. Voorhees] now owned or hereafter decreed to be owned by the seller" in the mountain ground and the grazing permit. The parties entered into that contract aware of the pending litigation mentioned above to determine whether such properties were assets of the estate. Mrs. Voorhees executed a transfer of the grazing permit to Hanson Livestock and the Bureau of Land Management accepted the transfer. Hanson Livestock deposited with Mrs. Voorhees $10,000 as a down payment. It has since paid the taxes and has grazed sheep as authorized by the permit.

Upon the day set for the trial of the civil action, April 1, 1959, Mrs. Voorhees and her daughters sought to compose their differences by entering into a "Memorandum of Understanding," hereinafter referred to as the Memorandum. Certain of its provisions are pertinent to the issues with which we are now concerned. It provided that the mountain ground should be included in the estate; it noted the existence of Mrs. Voorhees' contract with Hanson Livestock but recited that it was repudiated; and stated that "all proceeds from the estate as determined by the court in the probate proceedings, * * * shall be placed in trust, all net income therefrom to be paid to Mrs. Voorhees not less than quarterly during her life and the balance upon her death in equal shares to Betty Hayward and Beverly Clyde"; and further, that the action was "continued without date subject to being called up by either party should any question arise as to interpretation of this understanding or the items of money or property to be accounted for."

When Hanson Livestock learned that Mrs. Voorhees had agreed to repudiate her contract, it instituted action against her, the daughters and the administrator to quiet title to the mountain ground and also filed a notice of lis pendens.

In August and September, 1959, combined hearings were had on a motion of the

1. In re Estate of Voorhees, 8 Utah 2d 231, 332 P.2d 670 (1958).

daughters in the civil action and on an accounting by Mrs. Voorhees in the probate matter. Among the issues before the court was whether the mountain ground should be included in the estate. As a result of these hearings the court on October 2, 1959, entered the first decree Mrs. Voorhees now appeals from, ordering her to deed that property to the administrator. As provided in the Memorandum, the decree recited that, "This court shall and does retain jurisdiction over this cause to adjudicate any matter which may arise under the Memorandum pending the final creation of the trust provided therein, and in the further probate proceedings herein." The decree made no provision concerning the grazing permit.

In accordance with this decree, Mrs. Voorhees deeded the mountain ground to the administrator. She also accounted to it for the $10,000 down payment which she had received on the contract with Hanson Livestock. The latter then obtained permission to intervene in the probate proceeding and also offered the administrator the appraised value of $15.50 an acre (plus some interest) for the mountain ground, and $18,760 for the grazing permit (1,876 head at $10.00 per head.) The administrator and Hanson Livestock both petitioned the court to confirm the sale to Hanson Livestock on that basis. The daughters then filed a petition asking that the mountain ground be distributed to them, and offered to pay into court for use in connection with the trust for their mother its appraised value of $15.50 per acre. They later petitioned for their claimed two-thirds share in the grazing permit, offering to pay in the appraised value thereof on the basis of $10.00 per head.

During February and March, 1960, hearings were had on all of the foregoing petitions. The result therefrom was that on October 13, 1960, the court entered a judgment denying the petitions to confirm the sale to Hanson Livestock. It granted to the daughters partial distribution (their claimed statutory one-third interest each) in the mountain ground and the grazing permit, on the condition that they pay to the administrator or to the trust for their mother, $15.50 per acre distributed and $10.00 per head for the two-thirds interest in the grazing permit.

Mrs. Voorhees seeks to appeal from the decree of October 2, 1959, which emanated from both the probate proceeding and the civil case, and which ordered her to transfer the mountain ground to the estate. Both she and Hanson Livestock appeal from the judgment of October 13, 1960, just referred to.

Respondents raise an issue as to the timeliness of the appeal from the decree of October 2, 1959. It must be conceded that if that decree was appealable at the time of its entry, no appeal was taken within the

one month allowed by Rule 73(a), U.R.C.P. The appellants assert that it was not then final and therefore not appealable because of the proviso that the court retained jurisdiction "for the purpose of adjudicating any matter which may arise under the Memorandum pending the final creation of the trust." They point to the fact that there has been no formal setting up of the trust. It is appreciated that because of the factor just mentioned and that the two proceedings, the probate and the civil suit, were involved, there may be some justification for uncertainty as to the status of that judgment. However, cutting through the brush of attempted procedural forensics, it will be seen that the real issue between the parties and before the court was whether the mountain ground belonged to Mrs. Voorhees or to the estate. Upon plenary hearing thereon, the issue was resolved against her. The fact that the court retained jurisdiction as mentioned above to adjudicate further matters did not leave open for reconsideration the question as to who owned that property. There was nothing further to be decided on that particular issue and she was ordered to transfer it to the estate. That being so, the decree entered thereon was final and therefore appealable.[2] Since she took no appeal within the time allowed by law, that decree is conclusive.

It is further of interest to note that the trust has never yet been formally created, and that both proceedings are still in the same status as they were at the time of the October 2, 1959, decree. Therefore, if it were necessary that the trust be established before the determination that the estate owned the property could become final, there would not be an appealable decree even now, and the appeal therefrom would be premature, there having been no permission granted to take an interlocutory appeal as provided in Rule 72, U.R.C.P.

■ In deciding that the decree of October 2, 1959 must stand because no valid appeal was taken therefrom, in view of the necessity of dealing with the property in question as assets of the estate, we think it not amiss to observe that the findings that they are such are fully justified anyway. In the face of a bona fide dispute between Mrs. Voorhees and her daughters as to the ownership of the lands in question, they entered into the Memorandum agreeing that it should belong to the estate.

■ However the October 2, 1959, decree made no disposition of the grazing permit. But the one of October 13, 1960, included a finding that it also belonged to the estate, and recited that the findings were based on "evidence adduced at the hearing." Since

**2.** See In re Auerbach's Estate, 23 Utah 529, 65 P. 488 (1901) and cf. In re Williamson's Estate, 26 Utah 50, 72 P. 2 (1903). Also see In re Tasanan's Estate, 25 Utah 396, 71 P. 984 (1903); Farnsworth v. Hatch, 47 Utah 62, 151 P. 537 (1915); and In re Lynch's Estate, 123 Utah 57, 254 P.2d 454 (1953).

there is no transcript of such hearing, it is assumed that the finding is supported by the evidence.[3]

■ The challenge of the propriety of granting partial distribution of the mountain ground and the grazing permit to the daughters presents a problem of a different character. It seems likely that in making such order the court considered what may happen to the property by reason of the outstanding Hanson Livestock contract if the property passed to Mrs. Voorhees. However, that matter, which is the subject of a pending collateral law suit, is not of concern in this appeal. Whatever rights Hanson Livestock may have against Mrs. Voorhees, or against whatever property or interest therein she may acquire as a result of this appeal, and subsequent proceedings, must abide determination at the proper time and place. There must first be a determination of the rights of the disputing heirs, mother and daughters, in the property of the estate as between themselves before it can be told what Mrs. Voorhees' interest "now owned or hereafter decreed to be owned" is. These heirs are entitled and obliged to have such rights determined upon the basis of the evidence and the law applicable to the controversy between them. It is important to keep in mind that they had agreed what their rights in the property would be by entering into the Memorandum.

In exchange for Mrs. Voorhees' surrender of the mountain ground, the grazing permit and certain other assets, she was to get benefits tantamount to a life estate in the property by receiving the income from a trust to be made from the assets of the estate, and the daughters were to get the residuum after her death. Thus there were two purposes to be accomplished: (1) to benefit the mother during her lifetime; and (2) to benefit the daughters thereafter. Obviously the second purpose could not begin to be performed until the first had been fulfilled. The problem we then meet is whether the orders for partial distribution are in conformity with such purposes.

During the course of the hearings held in February and March, 1960, relating to the proposed confirmation of sale of the mountain ground and the grazing permit, or their partial distribution to the daughters, the court called for additional bids, as contemplated by the statutes.[4] Mr. J. Wallace Winch raised the bid on the land to $17.50 per acre; whereupon Hanson Livestock bid $18.00 per acre. In spite of these additional bids the court did not accept them but made the order allowing the daughters to deposit the appraised value of $15.50 per acre on what would be their distributive share, two-thirds of the mountain ground; and two-thirds of the grazing permit at $10.00 per head.

3. See Dahlberg v. Dahlberg, 77 Utah 157, 292 P. 214 (1930).

4. Secs. 75–10–15, 16, U.C.A.1953.

In view of the commitment the daughters had made under the Memorandum we can see no foundation upon which they could properly claim, nor upon which the court could properly order, partial distribution of their share of the estate as it did. In the court below the administrator, who does not appeal, and the appellants all argued against such partial distribution and in favor of confirming the sale to the highest bidder. They urged that assets of the estate would have to be sold in order to refund to Hanson Livestock the $10,000 it had deposited on the contract, in the event that sale was repudiated. In any event, whatever the objective, if it were necessary or desirable to sell that property, or part of it, in the absence of any devious purpose, it obviously would be more advantageous to the estate and those interested therein to accept a bid of $18.00 per acre than to take $15.50 per acre for two-thirds of it.

Under the Memorandum, Mrs. Voorhees was entitled to the maximum benefit obtainable from the property during her lifetime. It is so plain as to not admit of argument that such purpose would not be served best by distribution to the daughters at the lower figure. Thus, the order made is in conflict with Sec. 75–12–5, U.C.A.1953, which authorizes partial distribution of an estate where it is shown to be for the best interest of the beneficiaries, and that "No person interested in the estate [shall] be prejudiced [thereby] * * *." No such finding was made and none could have been because the order of partial distribution to the daughters obviously prejudiced the interests of Mrs. Voorhees by reducing the potential of income available to her. Accordingly, her attack upon it must be sustained.

As to the grazing permit, there is no disparity in price involved because all parties uniformly placed the value at $10.00 per head of sheep authorized to graze. But because the mountain ground serves as "base lands" for the permit there are questions as to its value and usability as separate property. In view of the considerations above discussed and the fact that the order of partial distribution of the permit to the daughters is interrelated to that of the mountain ground, the only practical course is to reverse the order of partial distribution as to the grazing permit also.

Intervenor Hanson Livestock makes the valid point that Mrs. Voorhees could not unilaterally repudiate her contract with it. It also argues that after it had filed its action to quiet title and notice of lis pendens the court had no authority in the instant proceeding to make further orders with respect to such property until its rights were determined in the quiet title action. Hanson Livestock entered into the contract with Mrs. Voorhees fully aware of the dispute existing between her and her daughters. Neither the filing of its action nor its intervention in the instant one had the effect of depriving the court of juris-

diction to determine the rights of the heirs between themselves.[5]  As above indicated, what right Hanson Livestock may or may not have against Mrs. Voorhees, or against any interest in the property that may finally come to her as a result of the probate proceedings, is not now before us.

The decree of October 2, 1959, that the mountain ground is part of the estate, and that of October 13, 1960, determining that the grazing permit is part of the estate, are affirmed.  The orders of October 13, 1960, granting partial distribution of said properties to the daughters (respondents) are reversed.  Costs to appellants.

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

5.  See 54 C.J.S. Lis Pendens § 16.