Estate of Phillips: Schultz, Executor, and another, Contestants and Appellants, v. Lena and others, Proponents and Respondents.

*November 27—December 29, 1961.*

For the appellants there were briefs and oral argument by *Stephen R. Miller* of Milwaukee.

For the respondents there was a brief by *Rheingans, Ketterer & Heidtman* of Milwaukee, and oral argument by *Russell E. Heidtman.*

MARTIN, C. J.   The trial court found there was no evidence of improper execution of the will of January 4, 1960. It found that on that date testatrix had the capacity to make a testamentary disposition of her property.  It also found that although Harold and Sylvia Lena did have the opportunity to exercise undue influence and the terms of the will were consistent with such an allegation, the appellants failed to prove the Lenas were disposed to exercise undue influence or that testatrix would have been susceptible to such influence.

The findings of the trial court must be affirmed unless they are contrary to the great weight and clear preponderance of the evidence.  The credibility of the witnesses and the

weight to be given their testimony are for the trial court to determine. *Estate of Fuller* (1957), 275 Wis. 1, 81 N. W. (2d) 64; *Estate of Fillar* (1960), 10 Wis. (2d) 141, 102 N. W. (2d) 210. The party who charges lack of testamentary capacity and undue influence has the burden of proving these items by clear, convincing, and satisfactory evidence. *Will of Ganchoff* (1961), 12 Wis. (2d) 503, 107 N. W. (2d) 474.

Appellants do not question the trial court's finding that the will was properly executed.

In contending that testatrix lacked testamentary capacity when she executed the will, appellants rely heavily on the testimony of Dr. Lieberman. The doctor, a specialist in the field of geriatrics, was on the staff of the Milwaukee County Asylum, and had examined testatrix after she was admitted in September of 1960, nine months after the will was executed. It was his opinion, based on her medical history and the examination, that she was mentally infirm and suffered from hallucinations and that these defects probably dated back to the death of her husband in September, 1959. The symptoms of mental infirmity were lack of memory, confusion, and inability to care for herself. Testatrix was suffering from arteriosclerosis which had progressed to an advanced degree by September, 1960. On examination by the court, the doctor testified that the progress of this particular disease varies with the individual; that in some patients it will progress more slowly, in others quite rapidly; that it was entirely possible that testatrix could have had lucid intervals in January, 1960. While it was his opinion that she was probably incompetent to make a will on that date, he also testified on cross-examination:

"*Q.* However, you can state, doctor, that there is a medical probability that on January 4, 1960, she was competent? *A.* There is that probability."

Loraine Krueger, a niece of testatrix, testified at the guardianship hearing held in August, 1960, that testatrix was in an irrational state about a week after her husband died.

Other witnesses testified that testatrix appeared normal and her usual self after her husband died. Attorney Panos, who drafted the will, testified that on the date the will was executed Mrs. Phillips appeared rational, in good memory, and well groomed.

Helen Hansen, a neighbor of Mrs. Phillips for many years, testified she visited with her frequently after Mr. Phillips' death; that her conversation was perfectly normal, and on February 10, 1960 (on the occasion of witness' father's funeral), she saw Mrs. Phillips and found her conversation normal, her physical appearance neat. She testified that testatrix was a good neighbor and a good housekeeper. Another neighbor, Anna Sem, testified that after the death of Mr. Phillips testatrix's conversations were normal and "she was fine."

Frank Zingsheim, a neighbor of the testatrix, testified that in the latter part of February, 1960, Mrs. Phillips asked him to fix a leaking kitchen faucet; that he spent an hour and a half with testatrix in her home on that occasion; that she brought him the tools he needed, told him where to shut off the water; that she followed his conversation well and answered his questions intelligently; that thereafter he saw her and talked with her once a month when he paid his garage rent. The witness' wife, Emma Zingsheim, testified that she was well acquainted with the testatrix; that she saw her frequently after Mr. Phillips' death and that she was very alert; there was no change in her physical appearance; she was active and carried on normal conversations.

Harold Lena testified that in January of 1960 testatrix dressed well and kept her house neat.

The general rule for testing testamentary capacity is whether the testatrix had a memory sufficient, without prompting, to comprehend the condition of her property and the objects of her bounty and had the ability to consider these items in relation to each other and make a rational decision with respect to them. *Will of Williams* (1950), 256 Wis. 338, 41 N. W. (2d) 191. This capacity is determined at the time the will is executed.

Infirmities of old age, such as forgetfulness, incoherence, and eccentricity, do not necessarily incapacitate a person from making a valid will. And the finding of incapacity to manage property sufficient to warrant guardianship does not negate capacity to make a will. A person may be incompetent at some times but may have rational intervals during which his acts will be given legal effect. *Will of Ganchoff, supra; Estate of Schalla* (1957), 2 Wis. (2d) 38, 86 N. W. (2d) 5.

The finding of the trial court that testatrix had testamentary capacity on the date the will was executed is supported by the greater weight and preponderance of the evidence.

There are four elements which when combined amount to undue influence: Opportunity to unduly influence; disposition to unduly influence; suspectibility to undue influence; and will provisions consistent with an exercise of such influence. *Will of Williams, supra.* Each element must be proved by the contestant by clear, convincing, and satisfactory evidence. But when three of these elements are clearly established, only slight additional evidence as to the fourth element is necessary to compel the inference of undue influence. *Estate of Larsen* (1959), 7 Wis. (2d) 263, 96 N. W. (2d) 489. Because the acts of unlawful influence are usually done in secret, the proof of the various elements is ordinarily based on circumstantial evidence; but proof

cannot be based on mere suspicion or conjecture. *Estate of Larsen, supra.*

In the instant case the trial court found that two of the elements—opportunity to unduly influence, and a will with terms consistent with an exercise of such influence—were established by the evidence. Appellants contend that the other two elements, disposition and susceptibility, were likewise established.

A disposition to unduly influence a testatrix means something more than a mere desire to obtain a share of an estate. It implies a willingness to do something wrong or unfair. *Estate of Knutson* (1957), 275 Wis. 380, 82 N. W. (2d) 196.

Appellants attempted to prove the Lenas' disposition to unduly influence testatrix by showing that they controlled her life after the death of her husband in September, 1959. Evidence was presented with respect to various events which were supposed to indicate the extent to which Harold and Sylvia Lena controlled the testatrix's actions. There was testimony that the Lenas influenced her to cancel some repairs to the sidewalk outside her home which Attorney Schultz was going to arrange for and to which testatrix had assented. There was also testimony that the Lenas influenced the testatrix to cancel an increase in property-liability insurance which was suggested by Schultz and at first accepted by testatrix. Sylvia testified Schultz told her the insurance would be cheaper and when she found the premium was increased she asked him about it and he told her he had taken it upon himself to add to the insurance; that she did not cancel the insurance—Mrs. Phillips did. Appellants contend that the testimony shows the Lenas kept testatrix from seeing her friends. The only telephone in testatrix's house was upstairs in the Lena apartment. Sylvia testified she received calls for Mrs. Phillips and either delivered messages or asked her to come up and answer the phone, whichever

was requested. The Lenas allegedly interfered with a real-estate sale which was being handled by Schultz for the testatrix. Schultz had been the Phillipses' attorney while John Phillips was alive, but the Lenas took testatrix to another attorney. There was testimony that after John died Sylvia told testatrix that her present will was no longer valid and that she should make a new will. Sylvia testified that testatrix told Schultz she wanted to make a new will and give her house to Harold and Sylvia and that she wanted to get the old will back; that Schultz told her (Sylvia) that if Mrs. Phillips made a new will, the one he held would not be any good. Sylvia took testatrix to Attorney Panos' office for the preparation and execution of the will in question. She testified the reason she did so was that she felt Schultz had been overcharging testatrix for his services.

There is evidence that the Lenas got Loraine Krueger to write a letter to certain relatives of testatrix concerning the guardianship proceedings in the summer of 1960, urging these relatives to go along with what she and the Lenas were going to do. There was testimony that testatrix was afraid of Sylvia Lena. Sylvia testified that the relations between her and testatrix were good; that she and Harold had lived in the upstairs apartment for the past eight years; that testatrix always ate her main meals with them.

Attorney Panos testified that on the date testatrix executed the will she did not appear to be under any undue influence. Sylvia Lena was not in the office where testatrix executed her will. The two witnesses to the execution, Theanne Panos, the attorney's wife and secretary, and Sidney Spector, an attorney who shared offices with Panos, both testified that when the will was executed testatrix did not appear to be under any undue influence.

· Harold Lena testified that the Phillipses had cared for .him when he was a child, his mother having been unable to do so because of illness. He testified that all during his

adolescence, and until he was about twenty-three years of age, he spent considerable time with the Phillipses during the summer and on holidays. He testified that he did various repairs to the Phillipses' house during the years he and Sylvia lived there.

The evidence produced by appellants bearing on the disposition of the Lenas to unduly influence testatrix is not clear and satisfactory. Some of the witnesses contradicted one another, especially Schultz and the Lenas. Thus, their credibility was for the trial court. Appellants' evidence does not compel the inference that the Lenas were disposed to unduly influence testatrix. Even if it is conceded that they interfered with the relations between her and Attorney Schultz, a reasonable inference is that they were trying to be helpful to her. The inference of proper influence on the part of the Lenas is just as reasonable from the evidence as an inference of unlawful influence. The inferences to be drawn from the evidence are for the trial court. *Estate of Fuller, supra.* Its finding that appellants failed to meet their burden of proof was proper.

Appellants also contend that the evidence clearly establishes that testatrix was susceptible to undue influence. The main point of their argument is that testatrix was very dependent on her husband and after his death she was emotionally unstable and susceptible to influence. There was testimony that she was overwrought by her husband's death, but there was also testimony that she appeared and acted the same after his death as before. The attorney who drafted the will, and the two witnesses to it, all testified that at the time of its execution testatrix did not appear to be under any undue influence, that she was rational, well dressed, and had a reasonably good memory. The reason why a finding of undue influence invalidates a will is that the will is then not an expression of the intent of the person who executes

it. Thus, the undue influence had to be operating at the time the testatrix executed the will in order to invalidate the will. *Estate of Yahn* (1951), 258 Wis. 280, 45 N. W. (2d) 702. If she was capable of making a free choice on January 4, 1960, then the will is an expression of her own intent, and not that of the Lenas. Therefore, the testimony of the attorney who drew the will and the witnesses to it is very important. *Will of Grosse* (1932), 208 Wis. 473, 243 N. W. 465. Again, the credibility of witnesses and the weight to be given their testimony is for the trial court.

The terms of the will are natural. Harold was very close to testatrix. He spent much time with the Phillipses when he was a child. He had taken care of their house and their lake property. He was testatrix's nephew and Sylvia was his wife. Neither the cutting off of other heirs nor gifts to the alleged influencers necessarily amount to an unnatural disposition raising inferences of undue influence. *Estate of Knutson, supra.*

The trial court properly found that appellants failed to prove by clear and satisfactory evidence that testatrix was susceptible to undue influence.

Appellants contend that their evidence establishes a *prima facie* case of undue influence and that respondents failed to meet it. If the charge of undue influence is *prima facie* established, then the proponents of the will must introduce enough evidence so that at least there is no longer any clear and satisfactory proof of the charge. *Boardman v. Lorentzen* (1914), 155 Wis. 566, 145 N. W. 750. But the burden of proof does not shift, only the burden of proceeding.

Respondents' evidence indicated that the Lenas got along very well with the testatrix, that they helped her and cared for her. Some of the points raised by appellants' evidence were explained by that of the respondents. The respondents did meet their burden of proceeding and did render the

appellants' evidence less than clear and satisfactory on both the points of disposition and susceptibility.

*By the Court.*—Order affirmed.

CURRIE and HALLOWS, JJ., dissent.