PARKER *v.* PARKER.

5-3219                                          377 S. W. 2d 160

Opinion delivered April 6, 1964.

*Aurelle Burnside,* for appellant.

*T. O. Abbott,* for appellee.

FRANK HOLT, Associate Justice. This is an appeal from a probate court order admitting the will of Alabama Parker to probate and dismissing the appellants' petition contesting the will. For reversal the appellants first urge that the testatrix lacked testamentary capacity and was subjected to duress and undue influence in making her will. Since these two points are so intertwined we consider them together. On appeal this cause is considered *de novo* and it is well settled that we affirm a probate court order in a will contest unless against the preponderance of the evidence. *Parette* v. *Ivey,* 209 Ark. 364, 190 S. W. 2d 441.

On June 4, 1959 the testatrix, Alabama Parker who was seventy-eight years of age, went to her lawyer's office and executed her will which is now in question. She died on September 21, 1962, survived by twelve children and a grandson as her only heirs at law. In her will she bequeathed $1.00 each to seven of her children and the grandson, the appellants, and named her remaining five children, including the appellee, K. F. Parker, Executor, as residuary devisees to share equally.

In behalf of validity of the will, Emma Jean Burton, a retired school teacher and decedent's friend of long standing, testified that at the request of the testatrix she was present when the will was read, witnessed the signing together with Geneva Paschal [now deceased] and both of them attested to it. She testified that she considered Alabama competent to execute the will. The testatrix' personal physician from 1947 until her death in 1962 testified that in his opinion the testatrix was mentally competent to make the questioned will and to understand such a transaction. The attorney who drafted the will had handled legal matters for the testatrix and had known her for approximately forty years. He testi-

fied that he considered her mentally competent. Further, that when he read it to her in the presence of the attesting witnesses the testatrix replied, ''That is it, that is the way I want it,'' and proceeded to sign her will. He testified that he did not discuss the provisions of the will with anyone other than the testatrix and it was drafted strictly in accordance with her request. There was testimony by a granddaughter of the testatrix, Sandra Kay Parker, fifteen years of age, that she had lived with her grandmother most of her life and that she considered her to be competent and capable to conduct her affairs. There was evidence by other witnesses that the testatrix was physically and mentally capable of transacting her personal and business affairs.

The appellants offered evidence that their mother was feeble from age, had difficulty recognizing people, was very forgetful, and appeared mentally confused. Old age, physical incapacity, and partial eclipse of the mind will not invalidate a will if the testator had the capacity to understand the making of the will on the date it was made. *Yarbrough* v. *Moses,* 223 Ark. 489, 267 S. W. 2d 289. In the case at bar Sandra Kay Parker testified that her grandmother was unable to easily recognize people because she had cataracts on her eyes. Within a month after the execution of the will the testatrix, accompanied by a friend, made a train trip to Chicago where one of her children lived and thence to California where another one of her children resided. She had included both of these children among the residuary or principal beneficiaries in her will. From Chicago she was also accompanied by the fifteen-year-old granddaughter who testified that her grandmother required no medical attention of any kind on the trip.

The appellants further urge that their mother was dominated and subjected to undue influence by Ernestine Parker, the daughter and youngest child who resided with her mother from 1953 until her mother's death in 1962. This was denied by Ernestine who testified that she in no manner influenced her mother and that she

had no knowledge of the circumstances surrounding the making of the will.

We have long adhered to the rule that the burden of showing the lack of testamentary capacity and undue influence in the making of a will is upon the contestants. *Werbe* v. *Holt,* 218 Ark. 476, 237 S. W. 2d 478; *Sullivant* v. *Sullivant,* 236 Ark. 95, 364 S. W. 2d 665. Also, we have frequently defined the requisite mental capacity to make a valid will. It is that the testator must have (1) the ability to retain in memory without prompting the extent and condition of his property, (2) the mental ability to comprehend to whom he is giving his property, and (3) realization of the deserts and relationship to him of those he excludes from his will. *Shippen* v. *Shippen,* 213 Ark. 517, 211 S. W. 2d 433.

With respect to undue influence, we have long adhered to the rule that:

"* * * The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion or any other cause that deprives the testator of his free agency in the disposition of his property."

*McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590. The argument of undue influence is directed solely at Ernestine Parker who lived with her mother. It is significant that the mother saw fit to include four of her other children along with Ernestine as the principal beneficiaries, each sharing equally. In *Bruere* v. *Mullins,* 229 Ark. 320 S. W. 2d 274, we said:

"* * * one having the testamentary capacity to make a will, is not required to mete out equal and exact justice to relations, and the motives or partiality, affection or resentment by which they are influenced are not reviewable; and if one has the capacity to make a will, he may make it as eccentric, injudicious and unjust as caprice, frivolity or revenge can dictate."

Appellants also contend that the will was not properly executed. It is undisputed that the will was signed

by the testatrix and in the presence of two attesting witnesses. Both witnesses were disinterested since neither was given any "beneficial interest by way of devise." Ark. Stat. Ann. § 60-402 (Supp. 1963). Further, we think that proof of the execution of the will was properly made.

In the case at bar we agree with the Probate Judge that the appellants have not sustained the burden of proof required of them in establishing the lack of testamentary capacity of their mother or that undue influence was exerted upon her or that her will was not properly executed.

Affirmed.