DENNA, APPELLANT, *v.* CHRYSLER CORP. ET AL., APPELLEES.

[Cite as Denna v. Chrysler Corp., 1 Ohio App. 2d 582.]

(No. 7477—Decided May 19, 1964.)

*Messrs. Schwenker, Teaford, Brothers & Bernard,* for appellant.

*Messrs. Wiles, Doucher, Tressler & Martin,* for appellee Chrysler Corporation.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. John C. Elam, Mr. Herbert R. Brown* and *Mr. Jacob E. Davis,* for appellee George Byers Sons, Inc.

DUFFEY, J. This is an appeal from the Common Pleas Court of Franklin County from a judgment notwithstanding the verdict entered for the defendants-appellees, and the denial of plaintiff-appellant's motion for new trial.

Plaintiff-appellant purchased a Plymouth automobile from a dealer, defendant-appellee George Byers Sons, Inc. Defendant-appellee Chrysler Corporation is, of course, the manufacturer.

The petition alleges that the steering mechanism failed to operate when plaintiff was making a left turn causing a collision with a utility pole. It is alleged that plaintiff had three times complained that the steering was not functioning properly and that defendant undertook to repair it. It also alleges that the automobile contained defective parts. The causes of action are for negligence, implied warranty and express warranty as against the dealer and as against the manufacturer.

Upon trial, the court directed verdicts in favor of the dealer on negligence in the sale of the automobile, negligence in the repair, and on express warranty. Only the cause of action based on implied warranty was submitted to the jury. The court directed verdicts in favor of the manufacturer on negligence in the repair and on implied warranty. The case was submitted on negligence in the sale and on express warranty. The general verdict was for the plaintiff in the sum of $11,000.

The court granted judgment notwithstanding the verdict to the dealer and the manufacturer on the ground that the answers to special interrogatories were inconsistent with the general verdict and controlled over it. Plaintiff's motion for a new trial was overruled. Motions of both defendants for new trial were "held in abeyance." As to holding such a ruling in abeyance, compare Section 2323.181, Revised Code, providing that such a motion "shall, nevertheless, be considered and decided."

The principal issue briefed and argued by the parties relates to the special interrogatories and their effect on the general verdict. Since 1955, amendments to the controlling statutes have materially changed the function and operation of special interrogatories from that previously provided under Ohio law. The Supreme Court has made a careful and complete analysis of the special verdict and special interrogatory statutes in the case of *Miller* v. *McAllister* (1959), 169 Ohio St. 487.

A special verdict is now defined by Section 2315.14, Revised Code, as follows:

"A special verdict is one by which the jury finds separately upon each determinative issue tried by the jury so that nothing remains for the court but to render judgment in accordance with such findings."

Note that the statutory phrase is "each determinative issue." Such findings are not limited to questions of fact alone. See the *Miller case* at page 492. On the other hand, evidentiary matters are not "determinative issues." The purpose of the special verdict is to have the jury determine those issues which definitely settle the *entire* controversy so as to leave nothing for the court except to enter judgment. Obviously then a determinative issue is more than evidentiary and more than the traditional ultimate fact. See *Miller* at pages 494 and 496. In our opinion the determinative issues might best be described as the essential elements of a cause of action.

On the other hand, a special interrogatory or "Finding on Material Allegations" is defined by Section 2315.16, Revised Code, as follows:

"When either party requests it, the court shall instruct the jurors, if they render a general or *special verdict*, specially to find upon particular material allegations contained in the pleadings controverted by an adverse party, and submitted by the court in writing, to the jury, and shall direct the jury to return a written finding thereon. The verdict and finding must be entered on the journal and filed with the clerk." (Emphasis added.)

It is important to note that the special finding is used to test a special verdict as well as a general verdict. Thus the interrogatory and finding are to be directed to the controverted factual matters which form the basis for resolving a determinative issue.

In *Miller,* the court pointed out that Section 2315.16, Revised Code, contemplates findings on "essentially disputed matters of fact." The opinion goes on to comment that "Obviously, interrogatories are for the purpose of testing the soundness of a special verdict." The court further stated that "such interrogatories should be limited to material allegations of facts—controlling facts—as have been set out in the pleadings and controverted." *Miller* at pages 492 and 496.

While the special verdict is to dispose of the entire con-

troversy, the special finding goes only to controlling material facts in dispute. At the risk of using further synonyms without adding clarity, such findings test the probative facts which are the inferential basis of resolving determinative issues. In *Miller,* a special verdict sample draft is provided. The first two questions suggested in the draft are:

"1. Was the defendant, John Doe, negligent in one or more of the particulars alleged in the petition?"

"2. If the defendant, John Doe, was so negligent, was such negligence a proximate cause of any injuries which the plaintiff, Richard Roe, may have sustained?"

In contrast, a special interrogatory might ask:

Do you find that defendant, John Doe, was exceeding the speed of 40 miles per hour at the time his auto struck the plaintiff?

Do you find that the back injury alleged by the plaintiff, Richard Roe, in his petition is the result of his being struck by the defendant's auto?

Tested on these principles, four of the key interrogatories submitted in this case were clearly improper. They do not relate to controverted controlling facts but rather go directly to the determinative issues which properly are to be tested and properly are to be submitted by request for a special verdict. Several others ignore the necessity for simplicity and ease of answer, *i. e.,*

"* * * describe the nature of said defect.

"* * * describe the warranty."

We agree with the trial court that the answers to the interrogatories are irreconcilable. However, in our opinion, they are irreconcilable between themselves and, in many parts, most ambiguous. Section 2323.17, Revised Code, provides:

"When the verdict is special, or there is a special finding on particular questions of fact, or when the case is reserved, the court shall order what judgment shall be entered. Where a verdict is so indefinite, uncertain, or defective that a judgment cannot be rendered thereon, the court shall order a new trial."

Where the answers demonstrate confusion and are in irreconcilable conflict, no judgment can be rendered, and the trial court should order a new trial. *Miller* v. *McAllister* (1959), 169

Ohio St. 487, at 494; *Klever* v. *Reid Brothers Express, Inc.* (1949), 151 Ohio St. 467; *Garber* v. *Chrysler Corp.* (1943), 38 Ohio Law Abs. 405.

The record in this case shows that only two causes of the collision were presented under the pleadings and evidence. One was an icy, snowy street surface and the other a defect in the steering mechanism. There is no suggestion of any improper conduct in the manner of driving, *i. e.*, speed, inattention, etc. The jury found in interrogatory No. 1 that the weather conditions did not "proximately cause" the accident. Interrogatory No. 2 was:

"If you find from the evidence in this case that there was a defect in the steering mechanism in the car owned and operated by Plaintiff, was such defect, if any, sufficient to directly and proximately cause the accident described in the petition?

"Answer: Yes. There was a defect in the steering mechanism. The question, 'Did this defect contribute to the accident?' is not answered."

(Signed by ten jurors.)

Quite obviously the jury treated this as a double question for the understandable reason that they had not been previously asked about any defect. In our opinion it is equally obvious that they utterly failed to answer the causation question. The complete absence of any answer must be distinguished from an answer which fails to respond to the question as asked. In the latter instance, the answer actually given may be the equivalent of a finding against a party. However, the complete absence of any answer is an *incomplete verdict*. See *Garber* v. *Chrysler Corp.* (1943), 38 Ohio Law Abs. 405, at 415.

In interrogatory No. 8 the jury was asked if the "breach of an express warranty" on the steering mechanism was the "sole proximate cause" of the accident. The answer was "Initial but not sole cause." Over and beyond the impropriety of the question, the answer shows an understandable confusion on the meaning of proximate cause. If the road condition was not the legal cause, then on this record the defect in steering was. Yet in interrogatory No. 9 (c) (a compound and complex three-part interrogatory), the jury was asked if the defect "of which plaintiff was aware" (defined in interrogatory No. 9 (a) as a defect in the steering mechanism) was the "direct, proximate

and foreseeable cause'' of the accident. The answer was ''No.'' We see no point in discussing the unfortunate use of ''foreseeable'' in this already improper question. Suffice it to say, in our opinion, these questions and answers are so confusing that no judgment for either party could properly be entered.

Defendants have contended that the record establishes contributory negligence and the assumption of risk as a matter of law. In our opinion the evidence presents an issue of fact as to contributory negligence. As to assumption of risk, we are dubious that there is even an issue on the record, but in any event it would also be at least a question for the jury. With respect to assumption of risk, see *Smith* v. *Diamond Milk Products, Inc.* (1964), reversed on other grounds in 176 Ohio St. 143.

Plaintiff filed some 19 assignments of error. Those not already answered can be disposed of by several other observations. There is much discussion by defendants that the evidence does not establish plaintiff's contention that the steering ''locked'' or ''froze.'' As we read the plaintiff's testimony, she did not so claim. She stated that ''it seemed as though it—I don't know, as if it locked or froze.'' She had previously stated that the difficulty ''wasn't all of the time.'' She also stated that it was ''intermittent'' and ''off and on'' and ''more so at times than it was others.'' It was ''as if it was dragging, or something, or being held back by something.'' In view of this testimony, defendants' uncontroverted evidence that some steering was possible and that there was some power assist at all times does not refute the plaintiff's claim. Her testimony supports the position that the defect in the steering at the time in question caused enough loss of assist that she was not able to control the car. Whether there was such a defect and whether it did so prevent her from controlling the car were issues for the jury.

Plaintiff has claimed an express warranty. Two things have been shown; first, an express warranty as to defective parts limited to replacement and service, and limited as to duration. Obviously, this is of no help on this cause of action. Second, it was shown to some extent that the auto was advertised as equipped with ''full-time constant control power steering.'' We find no express warranty in that statement which is relevant to this case.

There is and must be a distinction between a seller's description of his product and a seller's warranty of his product. A warranty is an affirmation of fact or a promise relating to goods made to induce a purchase. See *Rogers* v. *Toni Home Permanent Co.* (1958), 167 Ohio St. 244. The quoted advertisement is primarily a description of a type of steering mechanism. It is in contrast to a manual type based on gears only. It is also in contrast to a type of power steering in which the power assist operates only if some significant manual effort is first made. It may be that the quoted statement when made with reference to a particular auto is an affirmation that the auto is equipped with that type of steering as opposed to the others. In this case it was. The advertisement may be an affirmation or promise that this type is designed to, and as a type will, provide full-time constant control power steering. Thus, proof that this type of steering is not designed to produce that effect, or although so designed is not a type capable of producing that effect, might establish the violation of express warranty. There is no such evidence. However, we see no affirmation or promise that every unit produced, or the particular unit on a particular car, will give that effect regardless of any defect in its component parts. We see no *express* warranty against any defect in any particular part as opposed perhaps to a defect common to all such parts used in this type of steering. In the present case, plaintiff does not purport to show that the hydraulic pumps were defective in design or that such pumps were incapable of functioning so as to provide this type of steering in these units. The evidence is limited to showing that the particular pump in this particular unit was defective.

An express warranty is just that. It must be found in a statement of the seller either explicitly or as the reasonable intendment of the statement made in the context in which it was made. It is to be distinguished from an implied warranty imposed by law or as an undertaking arising from trade usage or a sale for a specific purpose. See Section 1315.15, Revised Code, on implied warranty of fitness for a particular purpose, merchantable quality and trade usage. Counsel has referred to the breach "of the warranty of safe effective power steer-

ing.'' We cannot derive any such express warranty from the advertisement.

Obviously, this discussion of express warranty must be distinguished not only from implied warranty but from any question of negligence by the manufacturer in the production of the unit or its component parts.

The trial court properly directed a verdict on the issue of negligence by the dealer at the time of sale. Plaintiff's testimony was that she first noticed the trouble in the steering some two weeks after delivery when she was returning from a trip to West Virginia. However, we do find sufficient evidence to present an issue of fact as to negligence in the inspection and repair of the auto after complaint. Plaintiff testified to specific complaints on repeated occasions. This was countered by a denial of such complaints and exhibits of repair records which show no such complaints. However, to say that no ''reputable concern would make so vital a blunder so many times'' is argumentative and invades the province of the jury by weighing evidence. There being a conflict in the testimony, it was for the jury to decide.

Other points raised by the trial court's ruling are too minor or too subject to reappraisal upon the evidence presented at the new trial to warrant discussion in this opinion.

The judgment of the Common Pleas Court will be reversed and the cause will be remanded for further proceedings according to law.

*Judgment reversed.*

TROOP, J., concurs.
BRYANT, J. (Presiding), concurs in the judgment.