457 P.2d 265

**Joseph T. O'BRIEN, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, IN AND FOR MARICOPA COUNTY; Robert L. Myers, Judge thereof; and Valley Nat'l Bank of Arizona, a National Banking Association, Respondents.**

No. 9288.

Supreme Court of Arizona.

In Banc.

July 16, 1969.

See also 104 Ariz. 136, 449 P.2d 601.

Herbert Mallamo, Phoenix, for petitioner.

Jack C. Cavness, George Sorenson, and John W. Rood, Phoenix, for respondents.

UDALL, Chief Justice:

Caroline B. O'Brien died on the 13th day of February, 1964 in Tucson, Arizona. She was survived by four children: two natural, Joseph T. O'Brien, hereinafter referred to as petitioner, and Suzanne Bates; and two adopted, Robert George O'Brien and Thomas Henry O'Brien, both minors. Decedent's estate is valued in excess of $800,000.00.

Decedent left a will which was drafted by petitioner. Under the will the bulk of decedent's estate passed to the two natural

children, with provision that the adopted children receive only the jewelry. The will was contested, and after a six week trial the jury found it to have been the product of the undue influence of petitioner. The will was denied probate, leaving decedent intestate.

On March 3, 1967 petitioner filed a Petition for Letters of Administration. On the same date the Valley National Bank of Arizona, acting as the nominee of William G. Pearson, Jr., Guardian ad litem of the two adopted boys, also filed a Petition for Letters of Administration. On the day appointed for the hearing William Pearson filed objections to petitioner's petition "on the grounds that the applicant is not competent for appointment as Administrator of this estate."

The hearing was conducted on the petitions and the court entered an order appointing the bank as Administrator of the Estate of Caroline O'Brien. Petitioner was denied the appointment, and on April 27, 1967 applied to this court for an extraordinary writ upon the grounds that the trial court had exceeded its jurisdiction or was without jurisdiction in the premises. We remanded the case to the trial court for further proceedings including the making of findings of fact and conclusions of law and entry of the final order. (See O'Brien v. Superior Court et al., 102 Ariz. 570, 435 P. 2d 44.)

After remand the court conducted a hearing in keeping with the order of this court and, at the conclusion of the hearing, made the following findings of fact and conclusions of law:

### FINDINGS OF FACT
\* \* \*

"6. JOSEPH T. O'BRIEN has exhibited want of care and foresight in the expenditure of funds and the management of property in that he has spent sums disproportionate to his assets, income and earning capacity and he has been improvident in the management of his personal, financial and business affairs.

"7. JOSEPH T. O'BRIEN exhibits lack of business or management ability in that he is unable to account for major expenditures made or authorized by him in connection with the contest of the will of his mother CAROLINE BRANDT O'BRIEN.

"8. The testimony, conduct and demeanor of JOSEPH T. O'BRIEN on the witness stand is such as to discredit him and render him unworthy of belief.

"9. JOSEPH T. O'BRIEN unlawfully influenced his mother CAROLINE BRANDT O'BRIEN to execute a will excluding his adoptive brothers ROBERT GEORGE O'BRIEN and THOMAS HENRY O'BRIEN from any substantial share in the estate of CAROLINE BRANDT O'BRIEN and such action on the part of JOSEPH T. O'BRIEN would have cost the excluded brothers sums of money between $300,000 to $400,000.

"10. JOSEPH T. O'BRIEN in the conduct of his affairs as demonstrated by the evidence has displayed a lack of common sense and ordinary foresight.

"11. JOSEPH T. O'BRIEN by his declared intention to act as administrator without benefit of counsel exhibits a degree of rashness and improvidence not commensurate with the proper conduct of a probate proceeding involving serious questions of Federal and State taxation concerning three states and one Federal jurisdiction.

"12. The record of JOSEPH T. O'BRIEN while serving as guardian of the persons and the estates of ·ROBERT GEORGE O'BRIEN and THOMAS HENRY O'BRIEN in failing to file proper accountings and reports until required to do so by the Court demonstrates a want of care and foresight in the management of property.

"13. The actions of JOSEPH T. O'BRIEN as guardian of the persons and the estates of ROBERT GEORGE O'BRIEN and THOMAS HENRY O'BRIEN in connection with the protection of the pos- ·

sible interest of the adoptive brothers ROBERT GEORGE O'BRIEN and THOMAS HENRY O'BRIEN in the trust created by the grandfather of JOSEPH T. O'BRIEN exhibits a lack of moral principle and character.

"Based upon the foregoing findings, the Court concludes:

I

"JOSEPH T. O'BRIEN is incompetent to serve and execute the duties of the trust as administrator of the deceased, CAROLINE B. O'BRIEN, by reason of improvidence, want of understanding and integrity."

\*        \*        \*        \*        \*        \*

III

"It is in the best interest of all parties interested in the estate of the deceased that the VALLEY NATIONAL BANK OF ARIZONA, a national banking association, be appointed as administrator of the estate of the deceased, CAROLINE B. O'BRIEN, \* \* \*"

Petitioner filed with this court an application for Writ of Certiorari; Mandamus, or Prohibition. We granted certiorari.

Petitioner's argument can be summarized as follows:

1. As the son of the decedent, petitioner is entitled to a preference for appointment as administrator under the order of priority set forth in A.R.S. § 14–417.

2. There is a presumption of competency operating in favor of a petitioner for Letters of Administration which may only be overturned by clear and convincing evidence as to his incompetency.

3. The evidence presented at trial fails to support the trial court's finding that petitioner is incompetent to administer his mother's estate.

In this state the grounds upon which a court may refuse letters of administration are statutory. A.R.S. § 14–418 provides:

"A person is not competent to serve or to be appointed as administrator who is:

\*        \*        \*        \*        \*        \*

"4. Adjudged by the court to be incompetent to execute the duties of the trust by reason of drunkenness, improvidence, want of understanding or integrity."

The trial court specifically found petitioner to be incompetent by reason of "improvidence, want of understanding and integrity."

With regard to the specific traits of character, Bancroft Probate Practice provides:

"§ 232. Improvidence and Want of Integrity or Understanding. 'Improvidence,' as a disqualifying ground, is defined to be that want of care or foresight in the management of property which would be likely to render an estate liable to be lost or diminished in value. The determination of its existence in the particular applicant is a question of fact. \* \* \*. 'Integrity,' on the other hand, means soundness of moral principle and character as shown by one's dealings with others, and is used as a synonym for probity, honesty, and uprightness in business relations."

"Proof of want of integrity should be clear and convincing. \* \* \*.

"'Want of understanding refers to want of common intelligence, not to lack of education or comprehension of legal affairs, or want of instruction as to the state constitution, or lack of ability to read or speak English.'" 2 Bancroft's Probate Practice, 2d Edition, § 232, pp. 10 & 11.

It is conceded by respondent that the issue of want of understanding is not present here. We will therefore confine our discussion to the questions of petitioner's improvidence and lack of integrity.

*Improvidence*

We have reviewed the record and are of the opinion that there was no showing that in the hands of petitioner the estate would be liable to loss or diminution in value. At most the evidence demonstrated that petitioner has a poor memory, spends more money than is prudent, is anxious for

his inheritance and is not fond of his adoptive brothers. The bank may be more qualified than petitioner to handle the complex problems which may arise in the administration of this estate but the law does not dictate that the most qualified will be selected. On the contrary, A.R.S. § 14–417 sets out the order of persons to whom the administration shall be granted and under that statute petitioner is preferred over the bank.

### Lack of Integrity

We come to the question of petitioner's integrity. Our attention naturally focuses upon the fact that petitioner unduly influenced his mother's will. Since the fact is undisputed the only question remaining is whether such conduct evidences a lack of integrity as contemplated by A.R.S. § 14–418.

Respondent has called to our attention several decisions in other jurisdictions where letters of administration have been denied under circumstances similar to those we are here dealing with. In the case of In Re Sperrle's Estate, 47 Misc.2d 1084, 264 N.Y.S.2d 93 (1965) the decedent's son was named as executor in the will. Evidence showed that he attempted to alter the will to give himself a larger share. The court held that the attempt to alter showed sufficient dishonesty to disqualify him as executor and said:

> "The duties of executor are too important to be entrusted to a person, who, even in the absence of personal gain, seeks to frustrate the intentions of the Testatrix by attempting to alter her will."

The son of the decedent was refused letters on ground of want of integrity in In re Graff's Estate, 119 Mont. 311, 174 P.2d 216 (1946). In that case the evidence showed that the son claimed certain property as his own which was part of the estate. There was a serious question as to the honesty of the claim. The Washington court expressed its views on the subject in In re Banks' Estate, 56 Wash.2d 139, 351 P.2d 531 (1960), where it said:

> "In this regard, the trial court found, upon conflicting evidence, that appellant 'wilfully and intentionally destroyed the foregoing Will of Bessie Banks by burning it for the purpose of claiming the entire estate of his deceased spouse.' On the basis of this factual determination, the trial court did not err in refusing to appoint the appellant as executor."

See also In re McFarlane, 10 Utah 2d 217, 350 P.2d 631 (1960), where an attorney was disbarred for his conduct in unduly influencing a client to execute a will making the attorney a major beneficiary of her estate.

■ This court subscribes to the rule that a person unduly influences a testator or testatrix in executing a will when that person through his power over the mind of the testator or testatrix makes the latter's desires conform to his own, thereby "overmastering the volition" of the testator or testatrix. In re Estate of McCauley, 101 Ariz. 8, 415 P.2d 431 (1966).

■ "Undue Influence" infers an unlawful influence. Hinshaw v. Hinshaw, 134 Ind.App. 22, 182 N.E.2d 805 (1962). In Parker v. Parker, 237 Ark. 942, 377 S.W.2d 160 (1964), the following rule was laid down:

> "' * * * The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property.' "

See also, In Re Phillip's Estate, 15 Wis.2d 226, 112 N.W.2d 591 (1961), where it was said:

> "A disposition to unduly influence a testatrix means something more than a mere desire to obtain a share of an estate. It implies a willingness to do something wrong or unfair. * * *."

■ Unfortunately we do not have the record of the will contest before us and cannot take judicial notice of specific facts which surrounded the execution of the will. We do know, however, that petitioner was

a licensed attorney, that he drafted the will himself without aid of other legal counsel, and that the will was drafted shortly before decedent's death. Decedent had the right to believe she could rely upon the honor and good judgment of petitioner to provide for disposition of her property according to her desires. Petitioner, however, took advantage of the trust imposed in him and substituted his desires for hers. The result was an instrument which for all practical purposes disinherited decedent's two adopted sons, depriving them of a sum between $300,000 and $400,000, and gave their share to petitioner and his sister. We are of the opinion that petitioner has demonstrated that lack of integrity contemplated by A.R.S. § 14–418. We uphold the finding and conclusion of the trial court that petitioner was incompetent by want of integrity to administer decedent's estate.

In his closing memorandum petitioner makes reference to the fact that on the same day decedent's will was executed an instrument revoking all prior wills was executed. Both instruments were drafted by petitioner. At the conclusion of the will contest the jury returned two verdicts: (1) that the will was procured by the undue influence of petitioner, and (2) that the revocation instrument was not procured by the undue influence of petitioner. Petitioner claims in his memorandum that the verdicts are inconsistent, thus rendering the verdict invalidating the will of doubtful credibility. No legal or factual argument is offered to support petitioner's conclusion that the verdicts are inconsistent.

In order to determine whether there were inconsistent verdicts we would have to examine the provisions of the will which was denied validity by the jury as well as the provisions of the prior will or wills which were revoked by the revocation instrument. Neither the will or revocation instrument were made a part of the record in this matter and petitioner has not informed us of their content. To conclude that the jury arrived at inconsistent verdicts without inspecting the documents would be at best speculative. Circumstances may well have existed which would make it apparent that decedent clearly intended to revoke her prior will or wills. The prior document may have been drafted before the adoption of her two youngest sons or it may have failed to adequately distribute her estate.

The record is clear that the jury determined the petitioner unduly influenced his mother to draft a will making only token provisions for her two adopted sons. This fact, together with other facts developed in the case establishes a firm basis for the verdict reached by the jury.

For the foregoing reasons the judgment below is affirmed.

LOCKWOOD, V. C. J., and MELVYN T. SHELLEY, Judge of Superior Court, Navajo County, concur.

NOTE: Justice JACK D. H. HAYS having announced his disqualification, the Honorable MELVYN T. SHELLEY, Judge of the Superior Court of Navajo County, State of Arizona, was called to sit in his stead.

STRUCKMEYER, Justice (dissenting).

I am unable to agree with the conclusions reached by the majority. The basis of my disagreement requires a restatement and examination of the meager facts as they were known to or should have been known to the court below.

Caroline B. O'Brien died on the 13th day of February, 1964, survived by four children, two natural, Joseph T. O'Brien, petitioner, and Suzanne Bates, and two adopted, Robert George and Thomas Henry, both minors. She left a Last Will and Testament dated January 5, 1964, which had been drawn for her by petitioner, an attorney duly licensed to practice in Arizona. The will left the bulk of the decedent's property to petitioner and his natural sister, Suzanne Bates. In it petitioner was named as the executor. On the same day that decedent executed the will in question, by a separate instrument also drawn for her by petitioner, she executed a revocation of all previous wills.

The will was contested on behalf of the minor adopted children. The contest was resisted by Joseph T. O'Brien, petitioner herein, as the named executor in the will. After a six week trial, the jury returned two verdicts. 1. That the execution of the revocation of all previous wills *was not procured by O'Brien's undue influence,* and 2. That the execution of the will signed on the same day *was procured by the undue influence of O'Brien.*

It is, of course, the common practice in drafting wills to include a clause specifically revoking all previous wills. If the revocation clause had been inserted in the Caroline B. O'Brien will, necessarily it too would have fallen by the jury's verdict and her property would have passed by prior will. The findings of the jury that the will was procured by undue influence and that the revocation was not so procured results in decedent's property passing to her four children equally by the law of intestate succession, share and share alike.

After the will contest was concluded, O'Brien filed a petition for Letters of Administration on the estate of his mother. This was opposed by the guardian ad litem of the two adopted children on the grounds "that the applicant is not competent for appointment as administrator of this estate." The court below found that the "best interest of all the parties" was to appoint the Valley National Bank of Arizona as administrator of the estate. Application was made to this court for an extraordinary writ to compel the appointment of Joseph T. O'Brien. We issued an alternative writ of mandamus. This was quashed by written decision, O'Brien v. Superior Court, In and For Maricopa County, 102 Ariz. 570, 435 P.2d 44, on the grounds that there was no final judgment in the court below. Thereafter, the court below made thirteen findings of fact as to why O'Brien was not competent to act as administrator. We then granted certiorari.

As can be seen from findings #6 through #13 set forth in haec verba in the majority decision, they are more in the nature of

generalized factual conclusions than a statement of the basic facts. The majority do not find that any of these purported findings have a substantial basis with the exception of finding #9. From it the majority seek to infer a want of integrity.

This finding #9 is at this point repeated because it controls the disposition of this case:

"9. JOSEPH T. O'BRIEN unlawfully influenced his mother CAROLINE BRANDT O'BRIEN to execute a will excluding his adoptive brothers ROBERT GEORGE O'BRIEN and THOMAS HENRY O'BRIEN from any substantial share in the estate of CAROLINE BRANDT O'BRIEN and such action on the part of JOSEPH T. O'BRIEN would have cost the excluded brothers sums of money between $300,000 to $400,000."

It is obvious from the finding that the trial court was under some considerable misapprehension as to the facts in the case. First, since the estate is valued somewhat in the excess of $800,000.00 and since it now passes by law of intestate succession to the four children, natural and adopted, share and share alike, simple arithmetic indicates that the exclusion of the adopted children could not have cost them between $300,000.00 to $400,000.00, but rather something more closely approximating the sum of $200,000.00. This would be, of course, before the payment of taxes and costs of administration. *Second,* assuming from the jury's verdict that O'Brien did in fact unduly influence his mother to execute a will excluding his adopted brothers, and since there is no evidence whatsoever contained in the record that her former wills did not also substantially exclude the adopted brothers, the conclusion that O'Brien's undue influence "cost the excluded brothers sums of money" can only be the stuff from which dreams are made, pure fantasy! *Third,* nor was the trial judge apparently aware of Cause P58544 of the Superior Court of Maricopa County. Therein, it appears that the decedent, Caroline B. O'Brien, set up two trusts under which the

two adopted sons are the beneficiaries. The trust res was two insurance policies on her life totaling $110,000.00. She also set up two other irrevocable trusts for their benefit which, had they been completed to maturity, would have totaled in excess of $320,000.00. The value of these irrevocable trusts as of the date of Caroline B. O'Brien's death is not reflected in the record. In addition, the adopted children received specific bequests of the decedent's jewelry of the estimated value of $35,000.00. [See Inventory and Appraisal in the Caroline B. O'Brien Estate.]

My difference with the majority is the legal effect which should be given to the verdict that the execution of the will was procured by undue influence. I am of the opinion that no weight should be given to it, since the verdict of no undue influence on the execution of the revocation of previous wills raises an obvious irreconcilable inconsistency. There is a wealth of authority which recognizes that inconsistent verdicts or findings which cannot be reconciled invalidate the jury's verdicts because it is impossible to draw any certain conclusion as to the true facts of the case. Nor does there seem to be authority to the contrary, although, of course, there are cases which, while recognizing the rule, find it possible to reconcile the inconsistencies.

In Eldredge v. Miller, 78 Ariz. 140, 277 P.2d 239, this court touched briefly upon the question of whether the verdicts were inconsistent, although the basis for a new trial was the failure to give the proper instruction which might have prevented the inconsistent verdicts. We said:

" * * * Had the jury been told that if Eldredge's acts contributed to the accident there could be no recovery against Oltsvig on the cross-claim, the verdict might well have been in accordance with such instruction. To vitiate two verdicts because of inconsistency, they must necessarily be based on inconsistent findings of fact. The jury not having been told the legal consequences of the two verdicts might well have

thought that it could find in favor of defendants Eldredge on the cross-claim, even if it found as a fact that Loren Eldredge's negligence contributed to the damage to the Eldredge car." 78 Ariz. at 146, 277 P.2d at 243.

The statements of the court in Alabama Highway Express, Inc. v. Luster, 51 Tenn. App. 691, 371 S.W.2d 182, are a good example of the holdings on irreconcilable verdicts.

"The obligation of every jury is summarized in the oath taken by its members to render a true verdict according to the law and the evidence. This applies whether the jury is trying one or more cases. And where it plainly appears from the verdicts returned by a jury that it has not fulfilled this obligation but acting upon considerations other than those presented in the law and the evidence has returned irreconcilably conflicting verdicts, it is the duty of the trial court to order the jury to consider further with respect to these verdicts, and if it refuses (which we doubt will ever be the case), to order a mistrial, otherwise this Court must reverse.

\* \* \* \* \* \*

"That they are not reconcilable in fact appears on their face. The same jury on the same evidence has said the appealing defendants were guilty of proximate, causal negligence in the cases wherein they were defendants, but upon the same facts were not guilty of proximate, causal negligence in the cases wherein they were plaintiffs. These two conclusions are of course factually irreconcilable. The appealing defendants were either guilty of negligence which was the proximate cause of the deaths sued for or they were not. They could not in fact, be both proximately negligent and not proximately negligent." 371 S.W.2d at 185, 186.

As stated, both the instrument of revocation and the will were prepared by the testatrix's son, O'Brien. Both were signed by her on the same day. There is no sug-

gestion that the testatrix was of unsound mind so obviously the two instruments were executed to achieve a single result and pursuant to a common plan. The verdicts of the jury must have been returned upon considerations other than those presented in the law.

The Oklahoma Court in Burkett v. Moran [Okl.], 410 P.2d 876, adopted this rule where it found an inconsistency:

"The first sentence of the verdict returned in this case constitutes a general verdict for plaintiff, determining the issues of liability and damage in plaintiff's favor. Under the uncontradicted evidence, if defendant was liable to plaintiff at all, plaintiff was entitled to recover damages for past pain and suffering. The 'itemized statement' added by the jury conclusively shows that no award was made for this element of damages. The verdict is therefore inconsistent with itself and plaintiff is entitled to a new trial. Hallford v. Schumacher, Okl., 323 P.2d 989." 410 P.2d at 878.

See also McGuire v. McGuire, 152 Kan. 237, 103 P.2d 884; Denna v. Chrysler Corp., 1 Ohio App.2d 582, 206 N.E.2d 221.

In the instant case the judge in the court below made neither findings nor conclusions of law which purported to reconcile the two verdicts. [The majority attempt to supply this by speculation.] The trial judge simply chose the one he preferred and ignored the other. Nor do respondents point to any facts which might form the basis for a reconciliation of the two verdicts. It should be noted that no verdict was submitted to the jury in the will contest questioning the soundness of testatrix's mind.

The majority rely upon these cases as precedent for the conclusion of a want of integrity. In In Re Sperrle's Will, 47 Misc.2d 1084, 264 N.Y.S.2d 93, the facts were that the decedent's son who was named as the executor in the will attempted to alter the will to give himself a larger share. In In Re Graff's Estate, 119 Mont. 311, 174 P.2d 216, the son claimed certain property as his own which was part of the estate. In In Re Banks' Estate, 56 Wash.2d 139, 351 P.2d 531, in a proceeding to establish a lost will, it was shown that the named executor had burnt the will. He was denied appointment as administrator de bonis non with will annexed.

These cases clearly involve fraud and criminal acts. They are not authority for an inference of lack of integrity because of a possible undue influence.

Fraud and criminal acts involve a specific wrongful intent. This is not necessarily true where the question is undue influence. Obviously, a son can influence his mother. Children are not, however, forbidden by law from influencing their parents. Influence may even be rightfully used to procure the execution of a will. In Re Teller's Estate, 288 Mich. 193, 284 N.W. 696. There is, of course, no appreciable line to say when influence becomes undue. But how can this court or the judge below possibly say from these inconsistent verdicts alone that O'Brien, an attorney at law qualified to practice before this court, is a man so lacking in integrity that he is disqualified from holding a responsible office of trust. To draw an inference from one verdict when the other can only support a contrary conclusion is unrealistic, whimsical and arbitrary.

For the foregoing reasons, I dissent.

McFARLAND, J., concurs in this dissent.