Merle E. MOXLEY and Della F. Moxley,
Appellants (Plaintiffs),

v.

LARAMIE BUILDERS, INC.,
Appellee (Defendant).

No. 5108.

Supreme Court of Wyoming.

Sept. 27, 1979.

Jerome F. Statkus, Cheyenne, for appellants.

Walter Scott, Laramie, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The facts of *Tavares v. Horstman,* Wyo. 1975, 542 P.2d 1275, did not require us to extend a builder-vendor's implied warranty of fitness for habitation as well as liability for negligent construction beyond the first owner. The facts of this case are appropriate for such a holding, and we will reverse the district court's dismissal of the appellants' complaint which sought such a remedy.

The plaintiffs-appellants' complaint against appellee-defendant alleged that the defendant, in 1975, constructed a home for Oliver B. Wickham and his wife. On April 15, 1977, the plaintiffs purchased this same home from the Wickhams as well as the land upon which it was located. Plaintiffs moved into the home and gradually became aware in June, 1977, that the electrical wiring on the premises was defective and dangerous and, as a result, in July, 1977, had it inspected by the State of Wyoming Department of Fire Prevention and Electrical Safety.[1] It is claimed by plaintiffs that the wiring was planned, designed and installed by the defendant in an unlawful, careless and negligent manner by unlicensed electricians in September, 1975, for the original owner. It was also alleged that it was necessary to have the house rewired at a cost of $3,892.00 together with $20.00 expended for the cost of the state safety inspection. Punitive damages and attorney's fees were claimed as well. A jury was demanded.

The defendant filed a motion to dismiss. At the hearing, the court permitted the plaintiffs to amend the complaint in order to additionally allege a breach of implied warranty of fitness and habitability. The trial judge thereupon dismissed the complaint as amended upon the single ground that it failed to state a claim upon which relief can be granted. No other ground for dismissal is before us. Plaintiffs stood on their complaint and appealed.

When considering a motion to dismiss a complaint, pursuant to Rule 12(b)(6), W.R.C.P., on the ground that it fails to state a claim on which relief can be granted, the facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to the plaintiffs. *State Highway Commission v. Bourne,* Wyo.1967, 425 P.2d 59. We therefore treat as true all the allegations of plaintiffs' complaint.

There are three questions:

---

1. The inspection revealed discrepancies and violations of the National Electrical Code (NEC):

"1. The main panel is fed by 1/0 aluminum conductors into a 125 ampere rated service-equipment cabinet. The overcurrent devices are 20, 30, and 40 ampere rated wafer breakers. The panel is improperly wired in such a manner as to cause a standing voltage of 125 volts between the electric range, microwave oven and refrigerator. This condition is extremely hazardous to the occupants of the home or anyone else in the vicinity of these appliances. The bonding strap to bond the neutral to the cabinet was left disconnected. The grounding conductors were not terminated properly and were just twisted together in a ball. There were no tie handles on the 240 volt circuits. The grounding electrode and the grounding electrode conductor were not bonded to the cold water piping as required.

"2. Splices in the nonmetallic cable are numerous in the basement and the attic. These splices are not in compliance with code. A junction box must be used to make these splices. The wires are just twisted together and taped. Splicing devices suitable for the use must be employed. Section 110–14(b) NEC 1975.

"3. Ground fault interrupters (GFI) were not installed in the circuits to the outside outlets and the bathroom outlet as required by Section 210–8(a) NEC 1975.

"4. Two (2) receptacles were tested for proper ground and polarity. Neither one tested properly.

"5. It is reported by the present owner that, turning off two of the overcurrent devices to branch circuits, turns off nearly everything in the house. This indicates improper wiring throughout the house."

See, § 35–9–134, W.S.1977.

1. Should the implied warranty of habitability established in *Tavares* be extended to a contractor, who is not a builder-vendor? We will answer, "yes."

2. Should the second or other subsequent purchaser of a home be accorded the benefits of the implied warranty of habitability established in *Tavares*? We will answer, "yes."

3. Is a claim based on negligent construction available to these plaintiffs? We will answer, "yes."

■ In *Tavares v. Horstman,* supra, this court fully discussed the socio-economic background and reasoning behind abandonment of the doctrine of caveat emptor and its accouterments in the sale of a dwelling as out of harmony with more compassionate and understanding views. The mores of the day have changed and the ordinary home buyer is not in a position to discover hidden defects in a structure. A home buyer should be able to place reliance on the builder or developer who sells him a new home, the purchase of which in so many instances, is the largest single purchase a family makes in a lifetime. Courts will judicially protect the victims of shoddy workmanship.[2] Consumer protection demands that those who buy homes are entitled to rely on the skill of the builder and that the house is constructed so as to be reasonably fit for its intended use. The average purchaser is without adequate knowledge or opportunity to make a meaningful inspection of the component parts of a residential structure.

We can find no reason not to apply the basic concepts leading to establishment of the rules of *Tavares* to builders generally, and to a purchaser subsequent to the first owner. As in *Tavares*, we must confine our rulings in this case to the facts alleged in the complaint. A full development of the law in this area has not taken place, though there are identifiable trends.

■ We can see no difference between a builder or contractor who undertakes construction of a home and a builder-developer. To the buyer of a home the same considerations are present, no matter whether a builder constructs a residence on the land of the owner or whether the builder constructs a habitation on land he is developing and selling the residential structures as part of a package including the land. It is the structure and all its intricate components and related facilities that are the subject matter of the implied warranty. Those who hold themselves out as builders must be just as accountable for the workmanship that goes into a home that a buyer or his successor or successors in interest expect to occupy in the years that thereafter follow, as are builder-developers.

Electric wiring enclosed within the framework of the home or covered by fixtures is expected to last and remain safe beyond the period of little more than two years disclosed by the timetable set out in the complaint. Absent some explanation to justify a different conclusion, it can be expected that at the end of such a short period, a home reaches a subsequent buyer without substantial change from the condition it was in at the time it was built, delivered to and possession taken by the first owner. We have no difficulty taking judicial notice of that fact, which we can do at this stage of the proceedings, since it is a matter not subject to any reasonable dispute. Rule 201, W.R.E. It is true that there is a point in time beyond which the implied warranty will have expired based on a standard of reasonableness as expressed in *Tavares.* However, we can only conclude that point is not exceeded under the facts here presented.

■ There is a paucity of precedent on the liability of a builder to a second buyer or owner. However, *Barnes v. Mac Brown & Co., Inc.,* 1976, 264 Ind. 227, 342 N.E.2d 619, furnishes a reasonably workable rule. A builder's implied warranty of fitness for habitation runs not only in favor of the first

---

2. See Case Note by John Brooks, *Tavares v. Horstman,* XI Land and Water Law Review, No. 2,633.

owner but extends also to subsequent purchasers. However, this implied warranty is limited to latent defects which are not discoverable by the subsequent purchasers by reasonable inspection and which become manifest only after the purchase.

*Coburn v. Lenox Homes, Inc.,* 1977, 173 Conn. 567, 378 A.2d 599, takes a different tack, perhaps because of exigencies created by a Connecticut statute which gave an implied warranty to the purchaser from the vendor on a newly constructed single-family dwelling for three years. That case was decided in the context of the review of a demurrer to a complaint which was sustained by the superior court. The court construed the statute to cover only the first purchaser and not one who bought from the first purchaser within the three year period. The Connecticut court, however, turned to the law of negligence and held that a builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even if his work is completed and accepted by the first owner before the injuries occurred. However, liability is imposed under *Coburn* only if it is foreseeable that the contractor's work, if negligently done, may cause damage to the property or injury to persons living on or using the premises, citing *McDonough v. Whalen,* 1974, 365 Mass. 506, 512, 313 N.E.2d 435, 439. In *McDonough,* there is not a second owner, but rather a first owner who bypassed the builder and sought recovery of damages from the designer of the septic tank system and recovered.

■■ The purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work. With that object in mind, any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible. Let us assume for example a person contracts construction of a home and, a month after occupying, is transferred to another locality and must sell. Or let us look at the family which contracts construction, occupies the home and the head of the household dies a year later and the residence must, for economic reasons, be sold. Further, how about the one who contracts for construction of a home, occupies it and, after a couple of years, attracted by a profit incentive caused by inflation or otherwise, sells to another. No reason has been presented to us whereby the original owner should have the benefits of an implied warranty or a recovery on a negligence theory and the next owner should not simply because there has been a transfer. Such intervening sales, standing by themselves, should not, by any standard of reasonableness, effect an end to an implied warranty or, in that matter, a right of recovery on any other ground, upon manifestation of a defect. The builder always has available the defense that the defects are not attributable to him. In *Gable v. Silver,* Fla.App.1972, 258 So.2d 11, 50 A.L. R.3d 1062, the court pondered, but did not decide, what result would be reached where a purchase, more remote than the first, was involved. The court observed, "We recognize that liability must have an end but question the creation of any artificial limits of either time or remoteness to the original purchaser."

It must be realized that we are deciding this case only on a motion to dismiss for failure to state a claim. We have no idea what defenses may be interposed or what our views might be as to any such defenses presented upon a full development of this case in the trial court.

In conclusion, we summarize the rules of this case. A home builder's implied warranty of fitness for habitation extends to subsequent purchasers for a *reasonable* length of time and is limited to latent defects which become manifest after the purchase. A builder of a home is also liable for damages which are foreseeable and which are caused by his negligence, to subsequent purchasers of such a home with whom he has no contractual relation even though his work is accepted by the first owner before the damage became manifest.

Reversed and remanded for further proceedings consistent with this opinion.

ROONEY, Justice, specially concurring.

I concur with the majority of the court, but I express concern over the character of the broad language used in the first sentence of the fourth paragraph from the end of the majority opinion in which it is stated that "[t]he purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work." This may be, and is, one of the purposes of an implied warranty of fitness and it may be one of the purposes of express warranties. But, if such were the sole purpose of a warranty, as is here implied, the contractual aspect of the warranty is dulled. For example, the ability for a disclaimer is negated. A warranty provides protection for purchasers other than "innocent" ones. One of the purposes of a warranty is to induce a purchase. *Denna v. Chrysler Corp.,* 1 Ohio App.2d 582, 206 N.E.2d 221 (1964); *Nielson v. Hermansen,* 109 Utah 180, 166 P.2d 536 (1946); *Canon v. Chapman,* D.C.Okl., 161 F.Supp. 104 (1958). Inasmuch as a cause of action ex contractu or a tortious action premised on negligence, or both, are available to a contractee in construction contracts where negligence on the part of the contractor results in a breach of the implied warranty that the work will be performed in a skillful, careful, diligent and workmanlike manner, *Cline v. Sawyer,* Wyo., 600 P.2d 725 (1979), and inasmuch as the Wyoming comparative negligence statute, § 1–1–109, W.S.1977, provides for apportionment of damages in some instances in negligence cases, it is particularly important that the various purposes, elements, and results of the causes of action upon which the complaint is based be properly designated and considered.